**NORTHWEST COALITION FOR ALTERNATIVES TO PESTICIDES, et al., Plaintiffs,**

v.

**Carol BROWNER, Administrator United States Environmental Protection Agency, Defendant,**

**and**

**American Crop Protection Association, Intervenor.**

**Civil Action No. 94–1100 (JR).**

United States District Court, District of Columbia.

Oct. 11, 1996.

Lynne Bernabei, Debra Katz, Michael C. Subit, Bernabei & Katz, Washington, DC, Michael Axline, Deborah N. Mailander, Western Environmental Law Center, Eugene, OR, for Plaintiffs.

Douglas A. Wickham, Assistant U.S. Attorney, Washington, DC, for Defendant.

Kenneth W. Weinstein, Michael R. Neilson, McKenna & Cuneo, L.L.P., Washington, DC, for Intervenor American Crop Protection Association.

### MEMORANDUM

ROBERTSON, District Judge.

This FOIA action by two public interest organizations challenges EPA's response to their requests for information about the ingredients of six commercial pesticides. The American Crop Protection Association (ACPA) intervened on the side of EPA. The parties have all filed motions for summary judgment and presented extensive oral argument. At the center of this case is plaintiffs' claim that EPA has improperly interposed the manufacturers' claims of "trade secret" protection for the common names and Chemical Abstract System (CAS) numbers of the inert ingredients used in these pesticides. For the reasons stated in this opinion, the motions for summary judgment of plaintiffs and of defendant Browner will each be granted in part and denied in part. The motion for summary judgment of intervenor ACPA, to the extent it seeks relief or propounds a theory different from that of defendant Browner, will be denied.

### BACKGROUND

Before a pesticide may be registered for sale in the United States, its manufacturer is required by the Federal Insecticide Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136, to provide to the Environmental Protection Agency a complete statement of its formula, including the identities of all ingredients.

Pesticide ingredients that are specifically intended to harm or kill the target plant or animal are called "active" ingredients. Active ingredients must be identified on pesticide product labels.

Pesticide ingredients that are not "active" are called "inert." FIFRA § 2(m), 7 U.S.C. § 136(m). Only those inert ingredients that EPA has determined to be of "toxicological concern" are required to be identified on product labels. 40 C.F.R. §§ 156.10(g)(1) & (7); 52 Fed.Reg. 13305, 13307 (1987). EPA has found approximately forty inert ingredients to be "of toxicological concern" after testing them and has determined that approximately sixty-five others are potentially toxic. Those sixty-five inert ingredients have been assigned a high priority for further testing. 52 Fed.Reg. 13305, 13306 (1987); 54 Fed.Reg. 48314 (1989). More than two thousand inert ingredients are used in pesticides, however, and most of them have not been tested by EPA or evaluated for toxicity.

On April 8, 1991, plaintiffs sent a FOIA request to EPA seeking copies of the Confidential Statements of Formula for six pesticides. The request noted plaintiffs' "particular interest in the identity of inert ingredients, as opposed to percentages of

the ingredients...." On May 28, 1991, EPA issued an "initial denial" of the request, reciting its finding that the records "may contain trade secrets, or commercial or financial information which is exempt from disclosure under 5 U.S.C. § 552(b)(4)." Plaintiffs appealed from that initial denial on July 3, 1991. On December 17, 1991, EPA released partial copies of the Confidential Statements of Formula for three of the six pesticides but blocked out the identity of all inert ingredients except, in the case of one pesticide, the identity of the ingredient water. For the other three pesticides, EPA's December 17, 1991 action withheld the Confidential Statements of Formula in their entirety. On February 18, 1992, EPA notified plaintiffs that it had made a final determination denying further disclosure, again invoking 5 U.S.C. § 552(b)(4).

Plaintiffs wrote to EPA nearly two years later, on March 4, 1994, requesting reconsideration. Plaintiffs recited their reliance on EPA's own regulation, 40 C.F.R. § 2.205(h), which provides for another round of comments where "an earlier determination no longer describes correctly the information's entitlement to confidential treatment because of change in the applicable law, newly discovered or changes facts, or because the earlier determination was clearly erroneous." In their 1994 request, plaintiffs asserted that "more information about the toxicity of inert ingredients continues to come to light since EPA's denial of the FOIA request." They also invoked memoranda issued by President Clinton and Attorney General Reno which, plaintiffs asserted, "broadened federal agencies' obligations to disclose information" pursuant to FOIA. Plaintiffs received no response to their request for reconsideration, and they initiated this action.

Plaintiffs have framed their complaint in two counts. The first count alleges that EPA made its decision to withhold the requested information without properly applying the criteria established by its own regulations, 40 C.F.R. § 2.208. This first count invokes the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and 706(2)(D), asserting that EPA's action was not in accordance with the law and not in accordance with procedures required by law. The second count, brought directly under the Freedom of Information Act, asserts that information identifying the inert ingredients of the six pesticides is not trade secret information or confidential information within the meaning of 5 U.S.C. § 552(b)(4).

EPA's response to the first count, set forth in its motion for summary judgment, is that EPA did follow the proper procedures in reaching its determination, but that EPA is not required to incorporate a discussion of each of its decision criteria in its determinations and that, in any event, the Administrative Procedure Act does not provide an available vehicle for relief. As for the second count, EPA argues on the merits that the information it withheld from plaintiffs is in fact covered by the fourth exemption to FOIA as a trade secret, or confidential commercial information, or both. So framed, the issues required further explanation of the statutory and regulatory scheme and particularly of the interplay between FIFRA and FOIA.

*Regulatory Background*

EPA's Confidential Statement of Formula form requires that each component in a formulation be listed. For each component, the form must set forth the commonly accepted chemical name, trade name, and CAS number; the name and address of the suppliers; the EPA registration number; the amount and percentage by weight; and the purpose of the component in the formula. The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") requires that the complete formula of a pesticide be filed with EPA, and it also provides that an applicant for registration may mark any portions of data it submits "which in the applicant's opinion are trade secrets or commercial or financial information." FIFRA also states that EPA is not to make public information which in the Administrator's judgment contains or relates to trade secrets or commercial or financial information obtained from a person and privileged and confidential, FIFRA § 10(b), 7 U.S.C. § 136h(b).

In addition to the EPA's requirement that pesticide manufacturers submit CSFs, the

Emergency Planning and Community Right to Know Act (EPCRA) and OSHA's Hazard Communication Standards require chemical manufacturers to produce Material Safety Data Sheets (MSDS) listing the identity of all the ingredients. 42 U.S.C. § 11021; 29 C.F.R. 1910.1200(g). In limited situations, manufacturers that demonstrate supportable trade secret claims may exclude the identity of the chemical ingredient and identify a generic class instead. 42 U.S.C. § 11042(a)(1); 29 C.F.R. § 1910.1200(i). MSDS's are available to the public. 42 U.S.C. §§ 11021(c)(2), 11044.

## ANALYSIS

### 1. *Plaintiff's FOIA Claims*

#### *Exemption 3*

█ Intervenor ACPA argues that all information pertaining to pesticide inert ingredients is *per se* exempt from disclosure under FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and FIFRA § 10(d), 7 U.S.C. § 136h(d). FOIA Exemption 3 provides for the withholding of information that another federal statute prohibits from disclosure, if the other statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). ACPA argues that FIFRA § 10(d)(1)(C) is such a withholding statute. EPA does not support this argument and has not invoked Exemption 3 in withholding the information in dispute.

The plain language of FIFRA § 10 does not satisfy the narrow requirements of Exemption 3. FIFRA § 10(b) provides that, "subject to the limitations in subsections (d) ... the Administrator shall not make public information which in the Administrator's judgment contains ... trade secrets or confidential commercial information." 7 U.S.C. § 136h(b). One of these limitations is found in subsection 10(d)(1), which provides that test results and information regarding the safety of a pesticide "shall be available for

disclosure to the public." 7 U.S.C. § 136h(d)(1). That limitation is itself limited by § 10(d)(1)(C), which provides that § 10(d) does not *authorize* disclosure of any information that "discloses the identity or percentage quantity of any deliberately added inert ingredient of a pesticide." 7 U.S.C. § 136h(d)(1)(C). FIFRA § 10 does not prohibit the disclosure of inert ingredients in the absence of the Administrator's judgment. The stringent test established in *Reporters Comm. for Freedom of the Press v. United States Dept. of Justice*, 816 F.2d 730, 735 (D.C.Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C.Cir.1987), *rev'd on other grounds*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1992), is not satisfied.

#### *Exemption 4*

Exemption 4 of FOIA protects "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4).[1] Exemption 4 covers two categories of information in agency records: (1) trade secrets; and (2) confidential commercial information.

Determining whether the EPA has properly invoked Exemption 4 in withholding information requires that each item of the information in question be examined separately. FOIA requires that agencies segregate nonexempt information from exempt information when responding to FOIA requests. *See* 5 U.S.C. § 552(b).

The information that plaintiff is requesting and the EPA has withheld is the common names and Chemical Abstract System (CAS) numbers of the inert ingredients in six pesticides: Aatrex 80W, Weedone–LV4, Roundup, Velpar, Garlon 3A and Tordon 101.

### 1. *Trade secrets*

█ A "trade secret" is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial

---

1. Section 10(b) of FIFRA similarly provides that the EPA may not disclose to the public "trade secrets or commercial or financial information obtained from a person and privileged or confidential." 7 U.S.C. § 136h(b). Because Congress used essentially the identical language of FOIA Exemption 4 to define the scope of protected information in FIFRA § 10(b), the same standards apply to both.

effort." *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1288 (D.C.Cir. 1983). This definition is said to "incorporate[ ] a direct relationship between the information at issue and the productive process." *Id.*

■ EPA's *Vaughn* declaration recites that the "identities, percentages, purposes of inert ingredients and identities of suppliers" can be used by competitors to formulate a successful pesticide. *See* EPA Memorandum at 12. ACPA's argument, supported by member company affidavits, is that each pesticide's "formula" is a trade secret. Neither defendant has demonstrated, however, that the common name and CAS numbers of inert ingredients are trade secrets. In fact, ACPA's submission effectively acknowledges that the release of general identifying information about inert ingredients does not reveal formulas. *See* Troth Decl. at 9. Both defendants have also conceded that disclosing the common name of an inert ingredient may not reveal exactly which one of a class of ingredients sharing the same common name is used in a particular pesticide. *See, e.g.* Troth Decl. at ¶ 6 (polyglycol); *Vaughn* Decl. of Sadowsky at ¶ 25.

The claim of protection under the "trade secret" prong of Exemption 4 has not been adequately supported and will be denied.

### 2. Confidential Commercial Information

■ Information that (1) is financial or commercial; (2) was obtained from a person; and (3) is privileged or confidential is "confidential commercial information" under Exemption 4. *National Parks & Conservation Assn. v. Morton,* 498 F.2d 765 (D.C.Cir.1974). The only disputed element of that three-part test is the third one, "confidentiality." Commercial information is "confidential" for purposes of FOIA Exemption 4 if disclosure is likely to cause substantial harm to the competitive position of the person from whom the information was obtained. *Id.* at 770.

■ The burden of proving that the circumstances justify nondisclosure falls upon the party seeking to avoid disclosure. *National Parks & Conservation Assn. v. Kleppe,* 547 F.2d 673, 679 n. 20 (D.C.Cir.

1976). That party need not demonstrate actual harm but must show (1) actual competition and (2) a likelihood of substantial competitive injury. Conclusory and generalized allegations do not sustain the burden of nondisclosure under FOIA. *Id.* at 680. If the information at issue is publicly available through other sources, no showing of competitive harm can be made. *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1154 (D.C.Cir. 1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). The party asserting public availability must initially produce evidence to support its assertion, but the burden of *persuasion* remains on the opponent of disclosure. *See Occidental Petroleum v. SEC,* 873 F.2d 325, 342 (D.C.Cir. 1989).

■ The feasibility of "reverse engineering" is germane to the question whether information is in the public domain (and thus whether a showing of competitive harm can be made). *See Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 52 (D.C.Cir.1981). The test is "whether the release of the requested information, given its commercial value to competitors and the cost of acquiring it through other means, will cause substantial competitive harm to the business that submitted it." *Id.* at 52.

There is no genuine issue of material fact as to the economic feasibility of identifying the common names and CAS numbers of inert ingredients through "reverse engineering." Plaintiffs state that reverse engineering to identify *ingredients* is common practice in the pesticide industry. Boekelheide Supplemental Declaration ¶ 6. Defendants state that it is costly and impracticable to reverse engineer pesticide *formulas.* Neither factual proposition is challenged, and both are accepted as true. Lying between those two propositions, however, and unexplained on this record, is the question of how difficult and costly it is or would be to learn the identity of the inert ingredients of the six pesticides in question by reverse engineering. Defendants had the burden of both production and persuasion on that point, *see Occidental Petroleum, supra,* 873 F.2d at 342, and they did not sustain it.

A review of the record also reveals that there is little discussion of the possible competitive injury that may result from disclosing a CAS number for an inert ingredient. It is this court's understanding, based upon the record, that in general the CAS number does not disclose the "trade name" of an ingredient.

Turning now to the application of these principles, ingredient-by-ingredient:

### 1. *Aatrex 80W*

██ ACPA asserts only that the manufacturer would be commercially injured if compelled to "disclose the Aatrex 80W formula." This assertion fails to address specifically whether disclosure of the common names and CAS numbers would result in competitive harm to the manufacturer.

a. Inert ingredient #1.[2] EPA asserts that this ingredient "when combined with other inert ingredients . . . in specific proportions will result in a product that mixes better." *Vaughn* Decl. of Sadowsky at ¶ 10. This assertion fails to demonstrate competitive harm.

b. Inert ingredient #2 and Inert Ingredient #3. EPA states that "[w]hen used in precise proportions set out in the CSF, [these ingredients] provide the best performance of the formulation." *Vaughn* Decl. at ¶ 11. This statement fails to make the necessary showing of competitive harm.

c. Inert ingredient #4. EPA claims that this ingredient "when combined with the other ingredients . . . is best for providing consistent density." *Vaughn* Decl. at ¶ 12. This statement does not sustain defendants' burden of demonstrating competitive harm.

### 2. *Weedone–LV4*

EPA first makes a general statement that the manufacturer treats its product "formulation" as confidential and that competitors can only identify inert ingredients in a general fashion. *Vaughn* Decl. at ¶ 16. ACPA asserts that the "formula" used for Weedone results in a superior product and is therefore confidential.

a. Inert ingredient #1. EPA states that this ingredient "provides an especially evenly mixed product" and is "physically and chemically compatible with other ingredients in the formulation." *Vaughn* Decl. at ¶ 17. ACPA states that the manufacturer maintains the identity of this ingredient as a trade secret. Plaintiff claims to have been able to identify this ingredient as a "surfactant chemically similar to dodecyl benzene sulfonate." Grier Decl. at ¶ 1. The ingredient is identified on the CSF only by its trade name, and not by any other description. EPA's Reply Memorandum at 8. Because the common name and CAS number do not appear on the CSF, there is nothing to disclose under FOIA.

b. Inert ingredient #2. EPA asserts that this ingredient is "chemically compatible with other ingredients in the formulation" and "provides an especially even mixed product." ACPA claims that the manufacturer maintains the identity of this ingredient as a trade secret. This ingredient is identified on the CSF only by trade name and not by common name or CAS number. For this reason, there is nothing to disclose under FOIA.

██ c. Inert ingredient #3. ACPA and EPA both assert that the manufacturer maintains the identity of this ingredient as a trade secret. ACPA concedes that "the specific form and grade provided by the supplier is critical to [the] performance" of this ingredient. Chen 2nd Decl. at ¶ 21. The MSDS lists "petroleum distillates containing napthalene, CAS no. 91–20–3" as the inert ingredient in question. Plaintiff's Response, Exh. D. Through reverse engineering, a chemical laboratory identified "benzene derivatives" and "napthalene" as part of the ingredient in question. Grier Decl., Exh. D. Therefore, the record fails to show that release of the release of the requested information without trade name identification would cause competitive harm.

### 3. *Roundup*

a. Inert Ingredient #1. EPA acknowledges that this ingredient has been disclosed

---

**2.** A key to the coded identifications of inert ingredients accompanies this memorandum as Attach-

ment A and has been placed on the record under seal.

generally as "ethoxylated tallowamine" in a letter prepared by the manufacturer. *See* Exh. H to Complaint. The common name and CAS number of this ingredient have been disclosed on the publicly available MSDS. Pltf. Memorandum, Exh. G. ACPA also acknowledges that the manufacturer has publicly disclosed the identity of the ingredient in generic terms as "ethoxylated tallowamine" or "polyoxyethylene alkylamine." Graham 3rd Decl. at ¶ 1. EPA states that disclosure of the specific identities of the components of this ingredient would "allow competitors to formulate a product with similar stability and absorption qualities." *Vaughn* Decl. at ¶ 25. ACPA states that the manufacturer would suffer substantial harm by identifying the specific chemical identity of the proprietary ethoxylated tallowamine surfactant because it could lead to copying. Graham Decl. at ¶ 8. Because plaintiff is only seeking the common name of the ingredient and not the trade names of the specific components, defendants have failed to demonstrate competitive harm.

b. Inert ingredient # 2. The identity of this ingredient has been publicly disclosed both on an MSDS and letters written by the manufacturer. *See* Exh. H to Complaint; Pltf. Memorandum, Exh. G. EPA concedes that this ingredient is no longer subject to confidentiality. Defendant's Reply Memorandum at 3 n. 3.

c. Inert ingredient # 3. EPA concedes that the identity of this ingredient has been publicly disclosed and therefore is not subject to confidentiality. *Id.*

d. Inert ingredient # 4. The identity of this ingredient has been publicly disclosed in a non-confidential letter written by the manufacturer. Exh. H to Complaint. EPA no longer considers this ingredient confidential. Deft. Reply Memorandum at 3 n. 3.

4. *Velpar*

a. Inert ingredient # 1. ACPA states that this ingredient makes the pesticide less prone to "cake." Metzger Decl. at ¶ 6. EPA claims this is a key ingredient in the manufacturing process and is "physically and chemically compatible with other ingredients in the formulation." *Vaughn* Decl. at ¶ 29.

Plaintiffs assert that the identity of this ingredient has been publicly disclosed in a 1991 U.S. Department of Agriculture Hezanonine Herbicide Information Profile. Pltf. Memorandum, Exh. F. ACPA argues that the profile contains the common chemical names of all of the inert ingredients in all of Hezanonine products produced by the manufacturer but does not disclose the particular combination of ingredients contained in Velpar or the CAS numbers. Miller Decl. at ¶ 1. ACPA also states that the manufacturer has never publicly disclosed the particular combination of inert ingredients used to produce Velpar. *Id.* The manufacturer does disclose a general classification of chemicals present in a formula if required to so for contract bidding or medical diagnosis. Metzger Decl. at ¶ 5.

ACPA acknowledges that disclosure of the common name of this inert ingredient would not be specific enough to produce a commercially viable pesticide because for most compounds "there are various commercially available products that can be used." Metzger 2nd Decl. at ¶ 10. Defendants have failed to show that the information in question is confidential or that its disclosure would result in competitive harm.

b. Inert Ingredient # 2. ACPA states that this is a "highly effective wetting agent" which gives excellent performance and could have utility in competing herbicides. Metzger Decl. at ¶ 6. Plaintiffs argue that the common name of this compound inert ingredient has been publicly disclosed in the Herbicide Information Profile. Pltf. Memorandum, Exh. F. Defendants have failed to sustain their burden of demonstrating that the requested information is confidential or that disclosure of such information would result in competitive harm.

c. Inert ingredient # 3. EPA states that this inert ingredient is effective and cost-saving. *Vaughn* Decl. at ¶ 31. ACPA states generally that disclosure of the "individual chemical compounds" in this formula does not "relate directly to the inert ingredients added to the product." Metzger 2nd Decl. at ¶ 3. Defendants have failed to sustain their burden of demonstrating competitive harm.

d. Inert ingredient # 4. EPA states that this ingredient is "physically and chemically compatible with other ingredients in the formulation." *Vaughn* Decl. at ¶ 32. The common name of this inert ingredient is identified on the Herbicide Information profile. Defendants have failed to establish that disclosure of the name and CAS of this ingredient as to this specific product would result in competitive harm.

### 5. *Garlon 3A*

 a. Inert Ingredient # 1. EPA acknowledges that the common name of this ingredient has been made public. *Vaughn* Decl. at ¶ 37. However, EPA asserts that the optimal polymeric molecular weight has not been disclosed and its release would allow competitors to ascertain the cost of production. *Id.* ACPA asserts that disclosure of the specific polyglycol used would enable competitors to improve a number of their products. Troth Decl. at ¶ 6. In addition, disclosure of the CAS number would identify the specific molecular weight of the polyglycol at issue. Keeney 2nd Decl. at ¶ 4. I find that the common name of the inert ingredient, polyglycol, is public information and therefore not subject to Exemption 4. However, defendants have made the necessary showing of competitive harm as to disclosure of the CAS number.

b. Inert ingredient # 2. The identity and CAS number of this inert ingredient are disclosed on an MSDS. Pltf. Memorandum, Exh. H. Defendants have therefore failed to sustain their burden of demonstrating competitive harm.

c. Inert ingredient # 3. The identity and CAS number of this inert ingredient have been disclosed on an MSDS. Pltf. Memorandum, Exh. H. Because this information is publicly available, defendants cannot demonstrate competitive harm.

d. Inert ingredient # 4. EPA concedes that the identity of this ingredient has been disclosed by the manufacturer in non-confidential communications. *See* Exh. I to Complaint. There is no showing in the record that disclosure of the CAS number would reveal information that would result in competitive harm. Therefore, defendants have failed to demonstrate that disclosure of the requested information would result in competitive harm.

### 6. *Tordon 101*

a. Inert ingredient # 1. The identity of this inert ingredient is identical to the polyglycol discussed in regards to Garlon 3A. The common name has been publicly disclosed and therefore is not confidential, but the CAS number is subject to protection under Exemption 4.

b. Inert ingredient # 2. EPA asserts that this is a sequestrant and its disclosure would "allow competitors to determine which substance [the manufacturer] chose to use for this purpose." *Vaughn* Decl. at ¶ 44. Defendants have not made the necessary showing as to what competitive harm would result from disclosure, and the information is therefore not protected by Exemption 4.

c. Inert ingredient # 3. The name and CAS of this inert ingredient have been publicly disclosed on an MSDS. Pltf. Memorandum, Exh. I. Because this information is publicly available, EPA concedes that it is not subject to the protection of Exemption 4. Deft. Reply Memorandum at 3 n. 3.

d. Inert ingredient # 4. The identity and CAS number of this ingredient are disclosed on an MSDS. Pltf. Memorandum, Exh. I. Therefore, it was not properly withheld under Exemption 4.

e. Inert ingredient # 5. The name and CAS number of this ingredient are disclosed on an MSDS. Pltf. Memorandum, Exh. I. Therefore, it does not fall within the protection of Exemption 4.

### 2. Plaintiff's APA claims

Plaintiffs assert a claim based upon the APA, 5 U.S.C. § 702 and § 706, alleging that EPA arbitrarily and capriciously failed to follow its own regulations in determining that the information should be withheld as confidential. They seek judicial review of EPA's decision to withhold information on grounds of confidentiality. The criteria for that review, they assert, are set forth in 40 C.F.R.

§ 2.208.[3] It is only the review that plaintiffs seek. They concede that the APA does not mandate disclosure.

It is not clear what relief plaintiffs are seeking with this APA claim. In FOIA cases brought under 5 U.S.C. § 552, the court engages in *de novo* review of the agency's actions. APA review against applicable standards is the stuff of reverse FOIA cases. Plaintiffs' APA claim will be dismissed as moot.

An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this 11th day of October, 1996,

ORDERED that the Clerk file under seal Attachment A to the accompanying memorandum which is a key to the inert ingredients. It is

FURTHER ORDERED that plaintiffs' motion for summary judgment [# 28] is **granted in part** and **denied in part.** It is

FURTHER ORDERED that defendant Browner's motion for summary judgment [# 26] is **denied in part** and **granted in part.** It is

FURTHER ORDERED that defendant Browner release to plaintiff the common names and Chemical Abstract System numbers of the inert ingredients on the Confidential Statements of Formula of Aatrex 80W, Weedone–LV4, Roundup, Velpar, Garlon 3A and Tordon 101, *except* as to the common name and CAS number of inert ingredient # 1 and # 2 in Weedone–LV4, the CAS number of inert ingredient # 1 in Garlon 3A, and the CAS number of inert ingredient # 1 in Tordon 101. It is

FURTHER ORDERED that plaintiffs' APA claim be **dismissed as moot.** It is

**3.** 40 C.F.R. § 2.208 provides that the EPA must consider the following criteria: (a) the business has claimed the requested information is confidential; (b) the business has satisfactorily shown that it has taken reasonable measures to protect confidentiality; (c) the information is not easily obtainable without the business' consent ... by use of legitimate means; (d) no statute specifical-

FURTHER ORDERED that intervenor's motion for summary judgment [# 27], to the extent it seeks relief or propounds a theory different from that of defendant Browner, is **denied.**

ly requires disclosure of the information; and (e)(1) the disclosure would cause substantial harm to the business' competitive position or, (2) if the information is voluntarily submitted, its disclosure would likely impair the Government's ability to obtain necessary information in the future.