**NORTHWEST COALITION FOR ALTERNATIVES TO PESTICIDES, et al., Plaintiffs,**

v.

**Carol BROWNER, Defendant,**

**and**

**American Crop Protection Association, Intervenor.**

**Civil Action No. 94–1100 (JR).**

United States District Court, District of Columbia.

May 12, 1997.

---

Lynne Bernabei, Debra Katz, Michael C. Subit, Bernabei & Katz, Washington, DC, Michael Axline, Western Environmental Law Center, Eugene, OR, for Plaintiffs.

Douglas A. Wickham, Assistant U.S. Attorney, Judiciary Center Building, Washington, DC, for Defendant.

Kenneth W. Weinstein, Michael R. Neilson, McKenna & Cuneo, L.L.P., Washington, DC, for Intervenor, American Crop Protection Association.

## MEMORANDUM

ROBERTSON, District Judge.

By order dated October 11, 1996, the court ordered defendant EPA to release the common names and chemical abstract numbers (CAS) of inert ingredients in six pesticides, after finding that the information was not entitled to protection under Exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4). Plaintiff now moves pursuant to 5 U.S.C. § 552(a)(4)(E) for attorney's fees in the amount of $ 166,107.90 and costs in the amount of $ 5,319.96. Defendant EPA opposes the motion, arguing that plaintiffs are neither eligible for costs nor entitled to the award they seek and arguing further that the amount of the award sought is unreasonable.[1]

### Procedural History

Plaintiffs, two public interest organizations, submitted a FOIA request to EPA seeking the Confidential Statements of Formula for six pesticides.[2] The request noted plaintiffs' "particular interest in the identity of inert ingredients, as opposed to percentages of ingredients." EPA denied plaintiffs' request on the grounds that the records requested contained trade secrets, or commercial or financial information, entitled to protection under Exemption 4. After plaintiffs filed an administrative appeal, EPA released partial copies of the Confidential Statements of Formula for Weedone LV4, Garlon 3A and

---

1. EPA also argues that plaintiffs' motion is untimely on the grounds that it was filed more than 14 days after the entry of judgment on October 11, 1996 (and denial of amendment of the judgment on November 27, 1996). Plaintiffs contend that no separate document setting forth entry of judgment has issued. By order dated October 11, 1996, issued separately from the memorandum opinion, the court set forth its decision adjudicating all of the claims of the parties. See F.R.C.P. 54(b); F.R.C.P. 58. To the extent that plaintiffs' motion is untimely, the court, in the exercise of its discretion, will deem it to be timely filed.

2. The background of this case and the regulatory scheme governing the registration of pesticides with EPA under the Federal Insecticide Fungicide and Rodenticide Act are set forth in detail in the court's memorandum of October 11, 1996. 941 F.Supp. 197 (D.D.C.1996). Only a brief summary is required here for purposes of addressing plaintiffs' motion.

Tordon 101, blacking out the identities and CAS number of the inert ingredients, except for the ingredient "water" in Garlon 3A. EPA withheld in their entirety the Confidential Statements of Formula for the three other pesticides.

What plaintiffs' lawsuit achieved was an order requiring EPA to release the common names of twenty-two of the twenty-four inert ingredients, and the CAS numbers of twenty of the twenty-four, because the information had been previously disclosed by the manufacturers, or because there was insufficient showing of competitive harm, or for both reasons.

### Analysis

■ FOIA provides for the award of attorneys fees and costs in any case in which "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). To obtain an award, an applicant must demonstrate (1) that the applicant "substantially prevailed" in the litigation and is thus "eligible" for an award; and (2) that the applicant is *entitled* to fees under a separate inquiry. *Weisberg v. United States Dept. of Justice,* 848 F.2d 1265, 1268 (D.C.Cir.1988).

### 1. *Eligibility*

■ A party has "substantially prevailed" if its shown that the lawsuit was "reasonably necessary" to obtain the information and "substantially caused the requested records to be released." *Chesapeake Bay Foundation v. Dept. of Agriculture,* 11 F.3d 211 (D.C.Cir.1993), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). In this case, EPA resists a finding of eligibility because, it argues, disclosure of the requested information did not result directly from this litigation. EPA asserts the majority of the information ordered disclosed was "already public" before the action was filed.

■ EPA's argument is unpersuasive. This litigation was not "unnecessary" in the sense that plaintiffs' dispute with EPA could have been resolved without filing suit. *See, e.g., Murty v. OPM,* 707 F.2d 815, 816 (4th Cir.1983) (lawsuit not necessary where telephone inquiry as to status of request would

have produced same result); *Weisberg v. United States Dept. of Justice,* 745 F.2d 1476 (D.C.Cir.1984) (party did not prevail where numerous FOIA requests outstanding at time of suit). EPA refused to disclose the requested information before the suit was filed and withdrew its assertion of confidentiality as to the identities of some inert ingredients only after plaintiffs uncovered previous public disclosures of the requested information and documented those discoveries in their pleadings. *See Public Law Educ. Inst. v. Department of Justice,* 744 F.2d 181, 183–84 & n. 4 (D.C.Cir.1984); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir.1977). As for the remaining ingredients, there can be no dispute that the October 11, 1996 order directly caused the release of the requested information.

### 2. *Entitlement*

■ Four considerations must be weighed in determining entitlement: (a) the public benefit derived from the case; (b) the commercial benefit to the plaintiff; (c) the nature of plaintiff's interest in the records; and (d) whether the government had a reasonable basis for withholding the requested information. *Chesapeake Bay Foundation, supra,* 11 F.3d at 216. EPA concedes that the second and third factors weigh in plaintiffs' favor, but disputes the application of the first and fourth factors.

■ *Public benefit.* The public benefit prong is satisfied if the "complainant's victory is likely to add to the fund of information that citizens may use in making vital choices." *Cotton v. Heyman,* 63 F.3d 1115, 1120 (D.C.Cir.1995). The analysis requires an evaluation of the specific documents at issue. *Id.* at 1120. Plaintiffs argue that, as a result of the court's ruling in this case, "information concerning the health risks of pesticides" will be made available to the public. Plaintiffs also assert that the court's ruling has important precedential value for ensuring the future release of information. EPA responds that "precedential effect" is an improper consideration in weighing the public benefit and that the disclosure of the inert ingredients contributed little to the public good.

■ The D.C. Circuit's recent opinions make it clear that the establishment of a legal right to information is not a "public benefit" within the meaning of § 552(a)(4)(E). *Chesapeake Bay Foundation, Inc. v. Department of Agriculture,* 108 F.3d 375, 377 (D.C.Cir.1997); *Cotton, supra,* 63 F.3d at 1120. As to the information released in or because of this case, the pertinent considerations are "degree of dissemination" and "likely public impact." *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978). The court must also consider the extent to which the information released is already in the public domain. *Tax Analysts v. United States Dept. of Justice,* 965 F.2d 1092, 1094 (D.C.Cir.1992).

■ The information released in or because of this case has some benefit to the public. Knowing the identities of inert ingredients in six commonly used pesticides will aid the public in evaluating the use and safety of those pesticides. Plaintiff NCAP distributes educational information packets and fact sheets about pesticides, and has a subscription base of 1800 members. It is true that the identities of approximately half of the ingredients ordered disclosed were otherwise publicly available. The ordered disclosure will nevertheless add to the fund of information available to the public concerning potentially toxic chemicals. The degree of dissemination and the amount of likely public impact are not quantifiable.

■ *Reasonableness of EPA withholding.* If the government was legally prohibited from disclosing the requested information, no fees are recoverable. *See Chesapeake Bay Foundation Inc., supra,* 108 F.3d at 376–77. In this case, however, there was no legal prohibition. The court rejected the manufacturers' position—which was not adopted by the EPA—that the EPA was prohibited from disclosing inert ingredient information under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136h(b). Accordingly, the only question is whether EPA's assertion of exemption on the basis of "trade secrets or confidentiality" was reasonable. The government "need only have a 'colorable

basis in law' for concluding that the information in issue was exempt," *Cotton supra,* 63 F.3d at 1121, but it must not have "been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Cuneo, supra,* 553 F.2d at 1366.

Plaintiffs assert that EPA's position was unreasonable because the EPA did nothing more than "rubber-stamp" the manufacturers' assertion of confidentiality or trade secret protection without any independent consideration of the relevant factors. *See* 40 C.F.R. § 2.208 (EPA regulation setting forth criteria). EPA's response is a plea of necessity: that it cannot embark upon its own investigation in every case and that it must necessarily rely on the information manufacturers supply in support of their assertions of confidentiality.

■ The court finds that EPA's denial of plaintiffs' FOIA request was not reasonable under the circumstances. EPA's own regulations required it to consider, not only the manufacturer's claim that the information was confidential or entitled to protection, but also whether the manufacturer had "taken steps to protect the confidentiality," and whether the "information was not obtainable by other means." 40 C.F.R. § 2.208. EPA was also required to consider whether any information, particularly the identities of the inert ingredients, could be segregated and disclosed from the pesticide formulas which were asserted to the "trade secrets". EPA chose to rely solely on manufacturers' claims of confidentiality, rather than conduct more extensive questioning of the manufacturers' claims or make its own inquiry.[3] That was essentially a decision not to commit resources to questioning claims of confidentiality but instead to confront issues as they arise in litigation—and to pay attorneys' fees if EPA loses. Plaintiffs are entitled to recover fees and costs. It remains to consider the reasonableness of their fee request.

## 3. *Reasonableness of amount requested*

■ The reasonableness of a fee request must be evaluated in light of the re-

---

3. Subsequent to the court's ruling, EPA amended the substantiation letter that it sends to manufac-

turers, adding more detailed inquiries as to the basis for the assertion of confidentiality.

sults obtained. *Riverside v. Rivera,* 477 U.S. 561, 572, 106 S.Ct. 2686, 2693, 91 L.Ed.2d 466 (1986). Where an applicant has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The fee amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980).

*Reasonable hours.* Plaintiffs' fee request spans the years 1990–1997. Their complaint was filed in May, 1994. The litigation was complex. Plaintiffs did extensive briefing and performed chemical analyses and laboratory testing. EPA challenges the reasonableness of the time for which plaintiffs seek compensation on the grounds that it includes time billed before the complaint was filed; time spent on issues upon which plaintiffs did not prevail; and time spent on claims advanced only by the intervenor.

■ Plaintiffs' application includes a total of 56.5 hours performed at least two years prior to the filing of the complaint. (*See* Exh. A at 5; items 7–9, 11, 16). FOIA does not authorize fees for work performed at the administrative stage. *Associated General Contractors v. EPA,* 488 F.Supp. 861, 864 (D.Nev.1980); *Kennedy v. Andrus,* 459 F.Supp. 240 (D.D.C.1978). The court finds that the hours billed for 1990–1992 are not compensable under FOIA.

■ Hours billed for time spent defending against arguments advanced by intervenor ACPA, but not adopted by EPA, are not compensable. EPA *opposed* ACPA's position that the requested information was *per se* exempt from disclosure under FOIA Exemption 3 and did not invoke that exemption in withholding information. Plaintiffs had to respond to ACPA's arguments, of course, but the time they spent researching the Exemption 3/FIFRA issue cannot reasonably be

charged to EPA. *Cf. Environmental Defense Fund v. EPA,* 672 F.2d 42, 56–57 (D.C.Cir.1982).

■ EPA argues that plaintiffs should not recover fees for their work on an APA claim that was dismissed as moot. That argument is mistaken. Plaintiffs' APA claim was not "distinct in all respects" from their FOIA claim, but rather presented an alternative approach to reviewing EPA's FOIA determinations—an approach that was unnecessary in light of plaintiffs' success under FOIA's *de novo* standard of review. EPA also argues that plaintiffs did not prevail as to information that was already in the public domain. That argument has been addressed and rejected by the court as to the issue of "eligibility" and need not be reconsidered here.

■ *Reasonable rate.* The appropriate hourly rate for public interest legal services organizations and for-profit firms engaged in public interest work is the "prevailing market rate." *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir. 1988). Plaintiffs rely upon the current U.S. Attorney's *Laffey* matrix as probative evidence of the prevailing market rates.[4] Plaintiffs also submit numerous affidavits, documenting their assertion that the *Laffey* rates represent the current prevailing market rate for the type of litigation involved in this case. EPA challenges the use of the *Laffey* matrix on several grounds, arguing: that Oregon, and not Washington, D.C., is the pertinent market; that plaintiffs are improperly applying 1996–97 rates to work performed significantly earlier in time; and that the *Laffey* matrix imposes rates at the high end of the prevailing market rate.

■ The pertinent legal market, for purposes of calculating legal fees, is the jurisdiction in which the district court sits—in this case, Washington, D.C. *See Donnell v. U.S.,* 682 F.2d 240, 251 (D.C.Cir.1982), *cert. de-*

---

**4.** The *Laffey* matrix, developed in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C. 1983), *aff'd in part by* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), sets forth a schedule of charges based upon years of experience and a compilation of prevailing market rates. The U.S. Attorney's office updates the schedule annually using the Consumer Price Index.

*nied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983).

 Attorneys' fees awarded against the United States government must be based on the prevailing market rates at the time the services were *performed,* rather than rates current at the time of the award. *See Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). *See also Save Our Cumberland Mountains, Inc. II, supra,* 857 F.2d at 1525; *Save Our Cumberland Mountains, Inc. v. Hodel I,* 826 F.2d 43, 50 (D.C.Cir.1987), *opinion vacated in part by* 857 F.2d 1516 (D.C.Cir.1988). The 1996–97 hourly rate relied upon by plaintiffs may be appropriate for hours billed during that period, but it overvalues the hours worked in 1990–1995. Contrary to plaintiffs' assertions, it is not proper to adjust historic rates to take inflation into account. *See Shaw, supra,* 478 U.S. at 322, 106 S.Ct. at 2965 ("whether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule"); *Save Our Cumberland Mountains I, supra,* 826 F.2d at 50 ("use of a current hourly rate to pay for work done at a time when rates were lower is simply a forbidden award of interest under another name").

 Adoption of the *Laffey* matrix has not been shown to be improper because it imposes the "upper limits" of the prevailing market rates for similar work. Plaintiffs' affidavits detail the experience and skill level of each of the attorneys, and the affidavit of Eric Glitzenstein attests that the rates requested are reasonable for the D.C. market. Those affidavits are not controverted by evidence, and the court will rely on them.

### 4. Costs.

Plaintiffs request costs in the amount of $5,319.96, covering court costs, transportation, telephone calls, photocopying, experts and labwork analysis. EPA opposes the request for costs, citing *West Virginia University Hospitals v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), for the proposition that plaintiffs are only entitled to "taxable" costs as set forth in 28 U.S.C. § 1920.

 FOIA permits an award against the government of "reasonable attorney's fees and other litigation costs reasonably incurred." 5 U.S.C. § 552(a)(4)(E). Where attorney's fees and costs are expressly authorized by statute, recoverable litigation expenses are not limited to taxable costs, but can include transportation, photocopying, postage, parking, and other miscellaneous charges. *See Save Our Cumberland Mountains, Inc. I, supra,* 826 F.2d at 53; *Kuzma v. Internal Revenue Service,* 821 F.2d 930, 932 (2nd Cir.1987). Plaintiffs are not entitled, however, to reimbursement for expert services in the amount of $1,102.98 (including laboratory tests). *West Virginia Hospitals, Inc., supra,* 499 U.S. at 86–91, 111 S.Ct. at 1140–43. Plaintiffs are entitled to costs in the total amount of $ 4,216.98.