Leslie R. **WEATHERHEAD**, Plaintiff,

v.

**UNITED STATES of America,
et al., Defendants.**

**No. CS–95–519–FVS.**

United States District Court,
E.D. Washington.

Aug. 10, 2000.

---

Gregory James Workland, Spokane, WA, Andrew G McBride, Cooper Carvin & Rosenthal, Washington, DC, for plaintiff.

James Richard Shively, U.S. Attorney's Office, Spokane, WA, John E Smith, U.S. Department of Justice, Civil Division Federal Programs Branch, Washington, DC, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

VAN SICKLE, District Judge.

**BEFORE THE COURT** is the plaintiff's motion for an award of attorney's fees and costs. At oral argument, the plaintiff was represented by Gregory Workland and Andrew McBride. The defendants, the Department of Justice and the Department of State (collectively "the government"), were represented by United States Attorney James Shively and John E. Smith.

The Supreme Court once warned the "[a] request for attorney's fees should note result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Sadly, that is exactly what has happened in this case. The Court has read the voluminous briefs submitted by the parties and is fully informed of the issues presented. This Order will memorialize the Court's ruling.

### Background

In 1994, Sally Ann Croft was extradited from Great Britain to the United States to face federal criminal charges in Oregon stemming from her alleged actions while a member of a spiritual group led by the Bhagwan Shree Rajneesh. The plaintiff, an attorney, represented Ms. Croft during the criminal proceedings. As part of that representation, the plaintiff sought to change the venue of his client's trial.

The plaintiff learned that a letter dated July 28, 1994 had been sent to the Department of Justice from the British Home Office. It is now known that the letter (the "Extradition Letter") expressed the Home Office's concern about Ms. Croft's ability to receive a fair trial in Oregon. The letter also indicated that the Home Office feared disapproval from Parliament of its decision to allow the extradition.

Aware that the Extradition Letter might express the Home Office's concerns of local prejudice, the plaintiff wished to present the letter to the district judge in Oregon in support of the motion for a change of venue. On November 29, 1994, the plaintiff filed a request with the government for disclosure of the Extradition Letter pursuant to the Freedom of Information Act (the "FOIA"). The government informed the plaintiff on December 19, 1994 that it was processing the request. The government did not acknowledge actual possession of the letter until May 1995.

At the time, the plaintiff's request for the letter was denied.

After pursuing administrative appeals without success and being given no reason for the government's refusal to produce the letter, the plaintiff filed this FOIA action, through his Spokane, Washington, attorney, Gregory Workland, on November 17, 1995. The government thereafter notified the plaintiff that it was withholding the letter under the FOIA's national security exemption; it claimed that the British Home Office strenuously objected to release of the Extradition Letter.

This Court originally ordered that the letter be released. After an *in camera* review of the letter on a motion for reconsideration, however, the Court ruled that the letter was exempt from disclosure. On appeal, the Ninth Circuit reversed in a split decision. The government was ordered to produce the letter. The Ninth Circuit stayed the order pending resolution of the government's appeal to the Supreme Court.

At that time, the plaintiff retained the Washington, D.C. law firm of Cooper, Carvin & Rosenthal ("Cooper, Carvin").

The Supreme Court granted certiorari.

In his November 1999 brief to the Supreme Court, the plaintiff revealed for the first time that on November 16, 1994, the British Consul in Seattle sent the plaintiff a letter (the "Consul Letter") regarding Ms. Croft's extradition. The government argues that the Consul Letter disclosed a significant portion of the contents of the supposedly confidential Extradition Letter.

Immediately after learning of the Consul Letter, the government contacted the Home Office. According to the government, the Home Office withdrew its objection to disclosure of the Extradition Letter and asked the government to provide a copy of the letter to the plaintiff. *See* Defs.' Opp., App. 161–62. On November 23, 1999, the government released the Extradition Letter to the plaintiff.

Upon release of the Extradition Letter, the issue certified by the Supreme Court on appeal was clearly moot. A new issue was created in its wake when the government asked the Supreme Court to vacate all lower court opinions. The plaintiff opposed vacatur.

Without commenting on its reasons, the Supreme Court dismissed the writ of certiorari as moot and ordered that all lower court decisions be vacated.

**ON CONSIDERATION WHEREOF,** it is ordered and adjudged by this Court that the judgment of the above court is vacated, and the case is remanded to the United States Court of Appeals for the Ninth Circuit with directions to order the vacation of the judgment of the United States District Court for the Eastern District of Washington and to dismiss the case as moot.

**IT IS FURTHER ORDERED** that the petitioners United States, et al., recover from Leslie R. Weatherhead Eight Hundred Eighty-five Dollars and Thirty Cents ($885.30) for costs herein expended.

*See* Defs.' Opp., App. 194 (*United States v. Weatherhead*, No. 98–1904 (U.S. Dec. 03, 1999)).[1]

The plaintiff now seeks an award of attorney's fees and costs in the amount of $237,340.18. He argues that since he received the only document requested in his FOIA complaint, he has substantially prevailed in this action and is thus entitled to a fee award.

### Analysis

■ The FOIA provides, in relevant part:

> The court may assess against the United States reasonable attorneys fees and other litigation costs reasonably incurred in any case under this section in

---

1. Supreme Court Rule 43.2 provides that "[i]f the Court reverses or vacates a judgment, the respondent or appellee shall pay costs unless the Court otherwise orders."

which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E). This Court has jurisdiction to decide the plaintiff's motion for attorney's fees even though the underlying action is moot, for "attorney fee issues are ancillary to the underlying action and survive independently under the court's equitable jurisdiction." *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir.1986).

In order to be awarded fees, the plaintiff must demonstrate that he is (1) eligible for attorney's fees and (2) entitled to attorney's fees. *See Long v. U.S. IRS*, 932 F.2d 1309, 1313 (9th Cir.1991). If a plaintiff has proved both eligibility for and entitlement to attorney's fees, the court must then review his fee bill to determine the reasonableness of both the number of hours expended and the hourly fee claimed. *See id.* at 1313–14.

### A. Eligibility.

A complainant in a FOIA action is eligible for an award of attorney's fees if he "substantially prevailed" in the litigation. To demonstrate that he has substantially prevailed, the complainant has the burden of establishing by convincing evidence the following two threshold conditions: (1) his filing of the FOIA action was "necessary" to obtain the information sought and (2) the action had a "substantial causative effect" on the ultimate receipt of that information. *See id.* at 1313. Whether the complainant has met his burden is a factual determination for the court. *See Church of Scientology v. United States Postal Service*, 700 F.2d 486, 489 (9th Cir.1983). The following three factors should be considered in determining whether the plaintiff has substantially prevailed: (1) when the document was released; (2) what actually triggered the document's release; and (3) whether the plaintiff was entitled to the document at an earlier time. *See id.* at 492.

Voluntary compliance by the government does not preclude an award of attorney's fees. *See id.*

### 1. Necessity.

In determining whether the lawsuit was necessary to obtain the information sought, courts tend to look at (1) the length of time between when the plaintiff made his initial request for the information and when he filed suit and (2) whether there was a reasonable explanation for the government's delay in turning over the requested material prior to litigation. "In making this determination, it is appropriate for the district court to consider, among other things, 'whether the agency, upon actual and reasonable notice of the request, made a good-faith effort to search out material and to pass on whether it should be disclosed.'" *Scientology*, 700 F.2d at 491 (quoting *Cox v. United States Department of Justice*, 601 F.2d 1, 6 (D.C.Cir.1979)). "[A] court must bear in mind that necessity can be determined only from the perspective of a reasonable person in the FOIA petitioner's circumstances at the time of filing." *Republic of New Afrika v. FBI*, 645 F.Supp. 117, 119 (D.D.C.1986).

The plaintiff first requested a copy of the Extradition Letter from the government in November 1994. For the next year, the government steadfastly, and without explanation, refused to disclose the letter. Only after unsuccessfully pursuing administrative appeals did the plaintiff file this action.

Furthermore, the plaintiff was seeking the information on behalf of a client facing federal criminal charges. The government knew that time was of the essence and yet it waited six months just to acknowledge possession of the requested document.

It is thus clear to the Court that the Extradition Letter would not have been disclosed to the plaintiff absent the initiation of this lawsuit, which the plaintiff did not file until the government unequivocally refused to produce the requested docu-

ment. The plaintiff has met his burden of showing by convincing evidence the necessity of this lawsuit.

### 2. Substantial Causative Effect.

■ To establish that he is eligible for an award of fees, the plaintiff must also show that the lawsuit had a "substantial causative effect" on the ultimate receipt of the information. In other words, a complainant must show a causal nexus between the institution and prosecution of the lawsuit and the release of the requested information. *See Church of Scientology v. Harris*, 653 F.2d 584, 588 (D.C.Cir. 1981).

A court order compelling a FOIA defendant to disclose information is not a pre-requisite to an award of fees. *See Republic of New Afrika*, 645 F.Supp. at 119. However, it is equally true that a plaintiff must show more than the mere fact that a document was disclosed subsequent to the initiation of a FOIA suit to satisfy the causation element. *See Scientology*, 700 F.2d at 491–92.

The government strenuously argues that it was the plaintiff's disclosure of the Consul Letter, not this lawsuit, that caused the government to release the Extradition Letter. The government claims that its objection to disclosure of the Extradition Letter was based on the need to protect the confidentiality of sensitive communications between the United States and Great Britain. The government further claims that the existence of the Consul Letter obviated the need to protect the information contained in the Extradition Letter.

The Court is not persuaded that the plaintiff's disclosure of the Consul Letter was the only factor considered by the government when it agreed to release the Extradition Letter. The Court's skepticism is based in large part on the contents of the two letters themselves. The Court finds from reading the letters that the Extradition Letter revealed the following information not contained in the Consul Letter: (1) that the Home Secretary de-

clined Ms. Croft's request to condition extradition on a change of venue but asked United States authorities to examine questions of local prejudice most carefully as the case had attracted "an unprecedented degree of Parliamentary, public and media attention" in Great Britain and (2) that the Home Office feared a Parliamentary vote condemning the Home Secretary for the extradition. *Compare* Defs.' Opp., App. 164–65, *with* Defs.' Opp., App. 193.

In fact, the only relevant information contained in the Consul Letter is that a July 28 letter to the Justice Department "stressed the Home Secretary's concern that questions of local prejudice were examined most carefully during the pre-trial process." Defs.' Opp., App. 193. The Court cannot see how that information alone compelled the government to withdraw its objection to the plaintiff's FOIA request. This Court is convinced that factored into the government's decision to release the requested document was the possibility of receiving an unfavorable decision from the Supreme Court, creating negative precedent for future disputes.

Furthermore, the Court reads the Supreme Court's admonishment in *Hensley* that attorney's fees requests should not result in a second major litigation as an endorsement of approaching such requests with common sense. Here, common sense supports the finding that, but for this lawsuit, the plaintiff would not have received the Extradition Letter.

The Court recognizes that there is a factual dispute concerning the extent to which the government influenced the Home Office's decision to withdraw its objection to disclosure of the Extradition Letter after being made aware of the Consul Letter. Regardless of whether that decision was independently made, as the government claims, or the product of coercion from this side of the Atlantic, as the plaintiff alleges, the government remains ultimately responsible its decision to release the document to the plaintiff. To

find otherwise would suggest that the United States government is a puppet of the British Home Office.

An evidentiary hearing to resolve this is factual dispute is therefore unnecessary for resolution of this motion. The Court finds that the plaintiff's diligent prosecution of his FOIA claim was a substantial causative effect on his ultimate receipt of the requested document.

### 3. Plaintiff's Alleged Wrongdoing.

■ Despite the Court's ruling that the plaintiff has shown both the "necessity" and the "causation" elements of eligibility, the government argues that the plaintiff is nonetheless ineligible for fees because of the plaintiff's alleged wrongdoing in not disclosing the Consul Letter earlier. The government argues that the "belated" disclosure unnecessarily prolonged this action. The government further argues that the Supreme Court's decision to vacate the decisions of the lower courts demonstrates that (1) the plaintiff did not substantially prevail and (2) the Supreme Court in some way faulted the plaintiff for mooting the case.

In arguing that "the Court, in granting the government's motion for vacatur ... necessarily decided that Plaintiff's eleventh-hour disclosure of the Consul Letter had caused the case to become moot," the government relies on *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). *See* Defs.' Opp. at 17–18.

The question before the Supreme Court in *Bonner* was whether appellate courts in the federal system should vacate civil judgments of lower courts in cases that are settled after an appeal is filed or certiorari is sought. *See Bonner*, 513 U.S. at 19, 115 S.Ct. at 388–89. The Court held that an appellate court's power to vacate mooted cases should be used sparingly.

[M]ootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur

can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course.

*Id.*, 513 U.S. at 29, 115 S.Ct. at 393. The Supreme Court recognized that vacatur is required where (1) a controversy has become moot due to circumstances unattributable to any of the parties or (2) where "mootness results from the unilateral action of the party who prevailed in the lower court." *Id.*, 513 U.S. at 23, 115 S.Ct. at 390. On the other hand, vacatur is inappropriate when the party seeking relief from the judgment below caused the mootness by voluntary action. *See id.*, 513 U.S. at 25, 115 S.Ct. at 392.

It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur.

*Id.*, 513 U.S. at 26, 115 S.Ct. at 392.

The government reasons that because it had the burden as the party seeking relief from the Ninth Circuit's judgment to demonstrate both the government's "equitable entitlement to the extraordinary remedy of vacatur" and that the plaintiff was equally responsible for the mootness, and because the government's motion for vacatur was granted, the Supreme Court must have faulted the plaintiff for the mootness in some way.

The government's cited reasons for the Supreme Court's vacatur are simple conjecture. The Supreme Court vacated the lower court decisions without comment; its rationale for the vacatur remains a topic of speculation.

Furthermore, to the extent that the government implies that the vacatur is an indication that the Supreme Court would have overruled the Ninth Circuit's decision, it simply is wrong. The Supreme Court has made clear that it will not va-

cate a lower court's decision in a mooted case on the basis of assumptions about the merits. *See Bonner*, 513 U.S at 27, 115 S.Ct. at 392–393 (it is inappropriate to vacate mooted cases based on the merits since the Court lacks constitutional power to review the merits).

This Court therefore finds that the Supreme Court's vacatur does not affect the determination that the plaintiff is eligible for attorney's fees.

### B. Entitlement.

■ A determination of eligibility does not automatically entitled the plaintiff to attorney's fees; rather, a determination of entitlement is left to the discretion of the trial court. *See Scientology*, 700 F.2d at 489. In exercising that discretion, courts are directed to consider the following four criteria: (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law. *See id.* at 492. The plaintiff bears the burden of proving that he is entitled to fees. *See Long*, 932 F.2d at 1313. Once a court determines that the plaintiff has met his burden, it cannot consider these factors when determining the amount of a fee award. *See id.* at 1315–16 (the four entitlement factors are irrelevant to the amount of the award).

The four factors stated above are intended to embody the two policy reasons underlying the FOIA's attorney's fees provision: (1) to encourage private individuals to litigate FOIA cases when there is no economic incentive to do so and when the public will benefit from the litigation and (2) to deter government recalcitrance toward compliance with the FOIA. No single criteria is dispositive; a court may consider any other factors it deems relevant. Assigning a relative weight to each of the four factors is within a court's discretion as well. There is no clear consensus among courts as to which factor is most important. "Because these policies promote multiple congressional goals, a court should not regard any one factor as conclusive." *Republic of New Afrika*, 645 F.Supp. at 120.

In analyzing the four factors, courts are encouraged to consider the criteria listed in the Senate Judiciary Committee's Report on the FOIA, in conjunction with the existing body of case law. *See Scientology*, 700 F.2d at 492. Each subsection below therefore begins with the criteria listed in the Committee's Report.

### 1. The Four Factors.

### a. Public Benefit.

■ Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government. S.Rep. No. 93–854, 93rd Cong.2nd Sess. 19 (1974) (as quoted in *Scientology*, 700 F.2d at 492 n. 6). Though the public always derives some benefit when a plaintiff prevails on a FOIA claim—since the plaintiff's suit brings the government into compliance with the FOIA—courts have recognized that that overarching benefit is insufficient to satisfy this prong of entitlement. *See, e.g., Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir.1978). Rather, the two primary factors for a court to consider when analyzing the public benefit prong are: (1) the degree of dissemination of the released documents and (2) the likely public impact that might result from disclosure. *See Scientology*, 700 F.2d at 493 (citing *Blue*, 570 F.2d at 533).

To benefit the public, the requested information does not have to be of general

interest to the public. *See id.* "A public benefit may result even though the specific document sought is for plaintiff's sole use." *Id.* For example, establishing favorable legal precedent in a case of first impression may make the public benefit prong weigh in a plaintiff's favor. *See Assembly of the State of Cal. v. United States Dep't of Commerce,* 1993 WL 188328, *4 (E.D.Cal. 1993); *Exner v. FBI,* 443 F.Supp. 1349, 1353 (S.D.Cal.1978), *aff'd,* 612 F.2d 1202 (9th Cir.1980).

The plaintiff argues that the public interest was benefitted in several ways by the forced disclosure of the Extradition Letter. First, the plaintiff argues that this case benefitted the public by establishing Ninth Circuit precedent favorable to FOIA plaintiffs. This argument fails, as the government duly notes, since all lower court opinions on the merits were vacated by the Supreme Court. There has been no precedent set in this litigation thus far.

The plaintiff next claims that there is a public benefit in ensuring that the United States adheres to its international agreements and commitments. The government counters that there was no agreement referenced in the Extradition Letter. The Court finds the government's objection valid.

Finally, the plaintiff claims that there is a public interest in ensuring the fairness of all federal criminal court proceedings. He argues that this interest was furthered by disclosure of the Extradition Letter, which articulated Great Britain's concern that Ms. Croft could not receive a fair trial in Oregon. The plaintiff claims that his lawsuit brought to public light the government's failure to disclose this information to the trial court in Ms. Croft's criminal case. The government counters that a claimed public interest in "fair trials" is too broad to satisfy the public interest prong.

The Court is aware that under a narrow construction of the Ninth Circuit's frame-

work, which measures the degree of dissemination and the likely public impact, the public benefit factor weighs against an award of fees. The degree of dissemination is minimal, as there is no indication that the Extradition Letter will be disseminated to anyone other than the plaintiff, his counsel, and maybe Ms. Croft. Furthermore, the Court cannot say with any certainty that there will be a direct public impact from the letter's disclosure.

But the Ninth Circuit's framework has not been narrowly construed by district courts within the Ninth Circuit. *See, e.g., O'Neill, Lysaght & Sun v. DEA,* 951 F.Supp. 1413 (C.D.Cal.1996). In *O'Neill,* the plaintiff was a law firm representing a client who had filed a habeas corpus appeal. In preparing the habeas petition, the law firm asked the DEA for certain documents in its file relating to a confidential informant, DeLoach, who had been a primary witness at the client's trial. After a protracted battle similar to the one now before the court, the DEA voluntarily released the requested information. The plaintiff then sought an award of attorney's fees.

The district court found that disclosure of the DEA file was of public benefit.

> DeLoach's conduct over a period of years as a DEA informant reveals a long history of abuse that eventually resulted in his blacklisting as an informant. Disclosure reveals both the abuse and the process to the public.... Although the information about DeLoach's credibility is sought for the specific benefit of Whitt's habeas petitions, [the law firm] asserts a public benefit from preventing unwarranted executions. Under *Church of Scientology,* there is a broader public benefit in exposing the implications of the government dealing with untrustworthy paid informants.

*Id.* at 1423–24.[2]

Here, the plaintiff has shown a similar public interest in promoting frank disclo-

---

2. Likewise, the District Court for the North- ern District of California found that there was

sures by the government in criminal proceedings involving extradited defendants. There is a public benefit derived from exposing the government's silence as to a foreign country's concerns about the ability of its citizen to receive a fair trial. The Court therefore finds that the public benefit prong weighs slightly in favor of a fee award.

### b. Commercial Interest.

 Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus [sic] but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.

S.Rep. No. 93–854, 93rd Cong.2nd Sess. 19 (1974) (as quoted in *Scientology,* 700 F.2d at 492 n. 6). If the potential for private commercial benefit was sufficient to encourage the claimant's pursuit of his claim, it would not be improper for the district court to deny an attorney's fees request. *See Scientology,* 700 F.2d at 494.

The government claims that an attorney has an inherent commercial interest any time he or she litigates on behalf of a client. The government's position is an over-generalization. While a tax attorney, for example, might have a commercial interest in securing a document from the Internal Revenue Service which would enhance his representation of multiple clients, the plaintiff-attorney in this case will derive no repeated benefit from the disclosure of the Extradition Letter. It is

extremely unlikely that the plaintiff was motivated by an economic incentive or that he will receive any commercial benefit from his five-year quest.

The Court finds that the commercial benefit factor weighs heavily in favor of a fee award.

### c. Nature of Complainant's Interest.

 Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.

S.Rep. No. 93–854, 93rd Cong.2nd Sess. 19 (1974) (as quoted in *Scientology,* 700 F.2d at 492 n. 6). This factor has been interpreted both in conjunction with the commercial benefit factor and independent from the commercial benefit factor. *See Scientology,* 700 F.2d at 494.

If either commercial benefit will inure to the plaintiff from the information or plaintiff intends to protect a private interest ... an award of attorney's fees is not recoverable. On the other hand, where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information.

*Id.* (citing *Werner–Continental, Inc. v. Farkas,* 478 F.Supp. 815, 817 (S.D.Ohio 1979), *aff'd,* 661 F.2d 935 (6th Cir.1981)).

Here, the plaintiff's interest in the Extradition Letter cannot properly be categorized as scholarly or journalistic. Neither,

---

"obviously an inherent public benefit" in requiring the government to diligently respond to a plaintiff's FOIA request for his medical file after a potentially botched surgery by a government hospital. *See Williams v. Department of the Army,* 1993 WL 372245, *4 (N.D.Cal.1993).

In contrast, the District Court for the District of Columbia found that the public interest was not served when the plaintiff initiated a FOIA action to obtain FBI records that

pertained to his arrest for narcotics trafficking for the purpose of challenging his arrest on constitutional grounds. *See Williams v. FBI,* 17 F.Supp.2d 6, 8 (D.D.C.1997). "While of great interest to himself, these specific documents are of little interest to the general public." *Id.; see also, Republic of New Afrika,* 645 F.Supp. at 121 (holding that a FOIA request to exonerate prosecuted individuals was a purely personal request of no interest to the public).

however, was it frivolous, and, as discussed above, the plaintiff had no commercial interest in the outcome. Instead, the plaintiff's true interests seem to be (1) zealously advocating for his client and (2) forcing government compliance with the spirit of the FOIA. These are laudable goals; the second was intended to be rewarded with an award of fees to prevailing plaintiffs.[3]

The Court finds that the nature of the plaintiff's interest weighs in favor of a fee award.

### d. Reasonable Basis in Law.

 Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester.

S.Rep. No. 93–854, 93rd Cong.2nd Sess. 19 (1974) (as quoted in *Scientology,* 700 F.2d at 492 n. 6). "In evaluating the reasonableness of the defendant's position, the court reviews its conduct from the initial request for the information to the ultimate submission of the documents requested." *Assembly of the State of Cal.,* 1993 WL 188328, *6 (citing *Guam Contractors Ass'n v. United States Dep't of Labor,* 570 F.Supp. 163, 169–170 (N.D.Cal.1983)). A determination of reasonableness does not require "delving into the merits of the request or refusal beyond examining the spirit in which the Government addressed the request." *Guam,* 570 F.Supp. at 169–70.

The plaintiff is hard-pressed to argue that the government's refusal to release the Extradition Letter once the FOIA suit was filed was unreasonable or without a colorable basis in law. Two of the four federal judges to have reviewed the merits of the plaintiff's claim found that the gov-

ernment could not be compelled to release the letter.

The Court, however, is also instructed to view the government's conduct beginning with the initial request. The government's tactic of stonewalling the plaintiff's attempts to gain access to the information through administrative channels is disheartening. The government's lack of cooperation early on is particularly troublesome in this case, which involved the time-sensitive needs of a criminal defendant.

The Court finds, however, that the fourth factor weighs against an award of attorney's fees in this case.

### 2. Other Considerations.

The government requests that the Court, in exercising its discretion, also consider the plaintiff's "belated" disclosure of the Consul Letter in determining whether he is entitled to fees. As hard as it has tried, the government has failed to show why the plaintiff should be faulted for failing to disclose the Consul Letter earlier. The plaintiff claims, and the government does not deny, that the government never inquired as to how the plaintiff learned of the Extradition Letter. *See* Pl.'s Post–Hearing Mem. at 4. The defendant has failed to show that the plaintiff had a duty to disclose the Consul Letter.

The Court therefore chooses to disregard the Consul Letter when determining whether the plaintiff is entitled to a fee award.

### 3. Balancing the Factors.

 The Court is thus left with the difficult task of balancing the four factors to determine whether the plaintiff is entitled to an award of fees. The following considerations favor an award of fees: (1) the plaintiff's lack of a commercial interest; (2) the plaintiff's laudable interest in

---

**3.** The government argues that because the Extradition Letter was of no interest to anyone but the plaintiff and his client, the interest protected was a purely private one. That argument was already rejected above, with the finding that the plaintiff satisfied the "public interest" prong of entitlement.

forcing government compliance with the FOIA; (3) the slight benefit to the public in promoting a fair criminal justice system; and (4) the government's initial recalcitrance toward the plaintiff's FOIA request. The following considerations favor denying a fee award: (1) the reasonableness of the government's refusal to disclose the letter once this FOIA lawsuit was initiated; (2) the minimal extent of dissemination of the information obtained by the plaintiff; and (3) the small public impact that is likely to result from disclosure of the letter.

After carefully considering the factors listed above, the Court finds that the plaintiff is entitled to an award of fees, as a fee award in this case promotes the two goals of the FOIA's fee provision—to encourage private individuals to litigate FOIA claims when there is no economic incentive to do so and to deter government recalcitrance toward compliance with the FOIA.

### 3. Merits.

 The government argues that even if the plaintiff establishes that he is eligible for, and entitled to, attorney's fees, the plaintiff still must show that his position was correct as a matter of law. For this proposition, the government relies on *Chesapeake Bay Foundation, Inc. v. United States Department of Agriculture,* 11 F.3d 211 (D.C.Cir.1993).

> [T]here can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct. Thus, in a case such as this one, in which the Government continues to insist that it had a valid basis for withholding requested documents, the District Court must determine whether the Government's position is legally correct in assessing any claim for fees under FOIA. In such a situation, it does not matter that information was disclosed after initial resistance, for this does not dispose of the question whether

the information sought was exempt from disclosure under FOIA. If the Government was right in claiming that the data were exempt from disclosure under FOIA, then no fees are recoverable.

*Chesapeake Bay,* 11 F.3d at 216 (internal citations omitted); *see also, Matlack, Inc. v. U.S. EPA,* 868 F.Supp. 627, 632 (D.Del. 1994).

The Ninth Circuit has never held that a FOIA plaintiff must show that he is legally entitled to the requested information in order to be awarded fees. Indeed, it is questionable whether a court has any authority to delve into the merits of a case that has been mooted for lack of a live case or controversy. The Supreme Court itself has held that " '[i]f a judgment has become moot [while awaiting review], this Court may not consider its merits.' " *Bonner,* 513 U.S. at 21, 115 S.Ct. at 390 (quoting *Walling v. James V. Reuter, Inc.,* 321 U.S. 671, 677, 64 S.Ct. 826, 829, 88 L.Ed. 1001 (1944)) (second parenthetical in *Bonner* ).

The Court declines to adopt this out-of-circuit requirement.

### C. Reasonableness of Fees.

 Once the Court determines that the plaintiff is eligible for, and entitled to, an award of fees, it then must determine the reasonableness of (1) the number of hours expended and (2) the hourly fee claimed. *See Long,* 932 F.2d at 1313–14. If the hours claimed and the rate charged are reasonable, "then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Id.* at 1314 (internal quotations omitted). "The court may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Id.*[4]

---

4. The *Long* court indicated that only if the Court finds that the lodestar is not reasonable must it then consider the factors commonly

known as the *Kerr* factors. *Id.* The twelve factors identified by the *Kerr* court are: (1) the time and labor required; (2) the novelty

### 1. Hours Claimed.

The plaintiff "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986), *amended*, 808 F.2d 1373 (9th Cir.1987). The government strenuously objects to the number of hours billed by both Mr. Workland and the attorneys at Cooper, Carvin. As is discussed in detail below, the government argues that the plaintiff requests compensation for non-compensable activities and that the plaintiff's attorneys failed to exercise proper billing judgment. In particular, the government takes umbrage with the fact that Cooper, Carvin attorneys billed seven times the number of hours for their work on the Supreme Court portion of the litigation that Mr. Workland billed for the entire case. As a remedy, the government recommends that the Court decrease the number of hours claimed by 20 percent.

### a. Compensable and Non–Compensable Activities.

The government argues that the plaintiff seeks compensation to which it is not entitled, for the following host of reasons:

### i. Inadequate Documentation.

The government argues that the submitted billing statements do not adequately document the attorneys' activities.

■ First, the government complains that the plaintiff's attorneys recorded their hours on a daily basis, rather than by task. Under the system used, if an attorney performed several tasks relating to this matter in a single day, the Court cannot discern from the billing statement how much time the attorney spent on each individual task. Though perhaps not the ideal practice, this is a common practice and the Court is not inclined to apply a blanket decrease of hours on this basis alone. After it has been determined, however, that some matters are not compensable for other reasons, and if the Court cannot discern how much time was spent on the noncompensable tasks because of the method by which the attorneys have recorded their hours, a conservative estimate will be used to assign hours to the compensable tasks.

The government also complains that counsel recorded meetings or telephone calls without mention of the subject discussed, as well as listed conferences or calls with individuals that have no apparent connection to the case. The government, however, does not cite to specific items billed that it finds improper. The Court declines to decrease the hours claimed on this basis.

■ Finally, the government complains that Andrew McBride billed in 30–minute increments rather than the standard 6–minute increments used by the other attorneys. This does appear to be the case in the first fee-bill submitted by Cooper, Carvin, although Mr. McBride switches to the 6–minute system for fees accrued on the attorney's fees portion of this litigation. The hours claimed by Mr. McBride prior to December 16, 1999 will be decreased by 5 percent to reflect the inaccuracies of a 30–minute billing system.[5]

### ii. Fees Billed After Release of Document.

■ The Court finds that the plaintiff is not entitled to an award of fees for

---

and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).

**5.** After all other reductions to the hours claimed by Mr. McBride, this 5 percent decrease equals approximately 11 hours.

time spent opposing the government's motion for vacatur, since the plaintiff was unsuccessful in opposing the motion and since the plaintiff had already received the only relief requested. *See, e.g., McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1174 (9th Cir.1999). Hours that did not contribute to the favorable result achieved by the plaintiff in the litigation may properly be excluded. *See Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 619 (9th Cir.1993). "[A] district court has the discretion 'to disallow any fees for time spent litigating the case after the last benefit won from the defendant, because the expenditure of such time is equivalent to expending time litigating particular claims that are unrelated to the relief ultimately obtained . . .' " *Id.* (quoting *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 920 (3rd Cir.1985)).

Hours spent by the plaintiff's attorneys opposing the motion for vacatur are thus excluded from the fee bill.[6]

### iii. Unnecessary and Unsuccessful Motion Practice.

The government also objects to the plaintiff's request for an award for hours spent preparing and filing two briefs that the government claims were unnecessary and unsuccessful: (1) the fall 1996 motion to set aside the judgment and (2) the plaintiff's opposition to the petition for certiorari.

The government argues that the Court should not award fees for the hours spent by Mr. Workland in the fall of 1996 on the plaintiff's motion to set aside this Court's judgment, which was denied. The government argues that because the plaintiff did not appeal the ruling, the motion did not contribute to any favorable result achieved by the litigation.

Likewise, the government asks the Court to eliminate from the fee award those hours spent opposing the government's petition for a writ of certiorari. The government argues that the plaintiff was not required to oppose the petition, the opposition did not advance the plaintiff's case in any way, and the plaintiff was unsuccessful in opposing the motion.

The Court finds instead that both motions were reasonable steps for the plaintiff to take in his pursuit of the Extradition Letter. Since the plaintiff was ultimately successful in gaining the relief sought, his attorneys are entitled to compensation for the time spent litigating the issues reasonably related to that goal.

### iv. Clerical Work.

The government objects to billing statement entries in which compensation is sought for what it considers "routine clerical work," such as filing and serving pleadings.

The government raises a legitimate complaint. For instance, Mr. Workland requests $150 for the hour he spent on February 16, 1996 filing documents with the Court and serving the U.S. Attorney's Office—tasks that could have been performed by a non-attorney. Such entries are excluded from the fee award.[7]

### v. Amicus Curiae Participation.

Next, the government argues that the plaintiff's attorneys cannot be compensated for the time they spent coordinating the briefing submitted by amicus curiae.

The government cites two cases for its stated position that "government fee awards are not to be used to fund participation by individuals and/or organizations as amicus curiae": *Lundin v. Mecham,*

---

**6.** A total of 71.5 hours was spent opposing the government's motion for vacatur. Specifically, the following attorneys' hours are excluded: Mr. McBride (43.5 hours); Mr. Cooper (19.6 hours); Ms. Ryan (6.9 hours); and Mr. Workland (1.5 hours).

**7.** Mr. Workland's claimed hours are accordingly decreased by 2.5 hours.

980 F.2d 1450 1461–63 (D.C.Cir.1992), and *A. Hirsh, Inc. v. United States,* 948 F.2d 1240, 1250–51 (Fed.Cir.1991). *See* Defs.' Opp. at 43. Neither of the government's cited cases is directly on point, as the issue before those courts was whether an amicus curiae may be awarded fees. Here, the plaintiff's amicus curiae do not seek an award of fees; rather, the plaintiff's attorneys seek fees for time spent coordinating the amicus briefing.

Nonetheless, the Court finds that such efforts are non-compensable, as they fall outside the central scope of the litigation. The number of hours claimed by the plaintiff's attorneys is reduced accordingly.[8]

#### b. "Billing Judgment".

 The government's second primary complaint with the number of hours claimed by the plaintiff's attorneys is the alleged lack of "billing judgment" shown the attorneys. As part of this general complaint, the government argues that the attorneys were inefficient, as none was well versed in the FOIA, and that Cooper, Carvin over-staffed its portion of the litigation.

> [W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure "as a practical means of trimming the fat from a fee application."

*Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992) (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2nd Cir.1983)). "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40.

The plaintiff argues that his attorneys exercised significant billing judgment. According to the plaintiff, Cooper, Carvin's fee bill was reduced by approximately $45,000. *See* Cooper Decl. at ¶ 7; Brown Decl. at ¶¶ 2–4. "This included review of drafts by lawyers not otherwise connected with the litigation, most summer associate time, and numerous small increments of time from the major participants in the case." Pl.'s Reply at 23. Cooper, Carvin also claims that it wrote off approximately $15,000 in costs. *See* Brown Decl. at ¶¶ 2–4. The costs written off included Lexis research, employee overtime, and photocopying. *See id.*

The plaintiff argues that Mr. Workland exercised reasonable billing judgment as well.

> The hours I spent on this case, as are set forth in my previous affidavit and attached billing statement, are less than the hours actually spent by me. I exercised extensive 'billing judgment' to my detriment throughout the entire time this case was being litigated.

Workland Supp.Dec. at ¶ 7. Mr. Workland also claims that his fees would "in all likelihood, be more than double the amount being sought" if not for the legal assistance of the plaintiff. *Id.* at ¶ 8. The plaintiff's assistance in this case, for which he cannot be compensated, cannot be over-emphasized.

The Court finds that the plaintiff's attorneys have exercised reasonable billing judgment.

#### 2. Hourly Rates.

#### a. Gregory Workland.

Mr. Workland has requested an hourly rate of $150 an hour. Mr. Workland graduated from Gonzaga University School of Law in 1986 and was admitted to the Washington State Bar that same year. He was general counsel for a corporation from

---

**8.** Specifically, the number of hours claimed by Mr. McBride is reduced by 6 hours; the number of hours claimed by Mr. Cooper is reduced by 2.4 hours.

1986 through 1991, at which time he entered private practice.

The government believes that Mr. Workland's awarded hourly rate should be no more than $125 an hour. In support of that rate, the government argues that (1) Mr. Workland had no prior FOIA experience and (2) Mr. Workland began his representation in this matter in 1995.

### i. Prior FOIA experience.

■ The government argues that because Mr. Workland had no prior FOIA experience, his rate should be less than the requested $150 an hour. The plaintiff, however, presented evidence that no attorney in the Eastern District of Washington has litigated a FOIA claim. *See* Workland Supp.Decl. at ¶ 9. It is thus reasonable to assume that had the plaintiff sought experienced FOIA counsel, he would have had to hire an attorney in a community larger than Spokane, where the hourly rates would be much higher. The Court is therefore unpersuaded that Mr. Workland's hourly rate should be reduced because of his inexperience with the FOIA.[9]

### ii. Historic Rate v. Current Rate.

■ The government also argues that the rate awarded to Mr. Workland should reflect his rate at the time the services were performed, rather than his current rate.

In general, the Ninth Circuit permits a court to award a current rate for work performed in the past as a means of compensating attorneys for inflation and the loss of use of the funds. "Either current or historical prevailing rates may be used," to determine the appropriate hourly rate for a fee award, although "[t]he use of current rates may be necessary to adjust

for inflation if the fee amount would otherwise be unreasonable." *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1384 (9th Cir.1990). "We have long recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds." *Gates,* 987 F.2d at 1406.

This case, however, falls outside the general rule, since any fees awarded will be taxed against the United States. In *Library of Congress v. Shaw,* the Supreme Court held that awarding interest on an award of attorney's fees in a Title VII action against the United States violated the United States' sovereign immunity from interest since Congress had not expressly waived the government's immunity from interest when it enacted Title VII. *See Library of Congress v. Shaw,* 478 U.S. 310, 323, 106 S.Ct. 2957, 2966, 92 L.Ed.2d 250 (1986) (abrogated as to Title VII by statute).

The government argues that using a current hourly rate when awarding attorney's fees for work done several years ago is akin to awarding interest.[10] It further argues that since the FOIA does not contain an express waiver of the government's immunity from interest, the Court must use Mr. Workland's historical, rather than current, rate when awarding fees for the first portion of this litigation. This was the result reached by the District Court for the District of Columbia in a 1997 FOIA action. *See Northwest Coalition for Alternatives to Pesticides v. Browner,* 965 F.Supp. 59, 66 (D.D.C.1997) ("Attorney's fees awarded against the United States government must be based on the prevailing market rates at the time the services

---

9. Again, the Court notes that Mr. Workland's inexperience was made up for, in part, by the legal assistance of the plaintiff himself.

10. , Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of mon-

ey.... Thus, whether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule.

*Shaw,* 478 U.S. at 322, 106 S.Ct. at 2965.

were *performed,* rather than the rates current at the time of the award.").

The Court agrees that *Shaw* dictates the result reached by the *Browner* court. Thus, Mr. Workland's awarded rate must reflect the prevailing market rate at the time the services were performed.

Mr. Workland is awarded an hourly rate of $130 an hour for work performed from December 14, 1995 to May 27, 1997; an hourly rate of $140 for work performed from February 23, 1998 to May 14, 1998; and an hourly rate of $150 an hour for work performed from November 6, 1998 to the present. The Court finds that the above rates reflect the prevailing market rates in Spokane in light of Mr. Workland's experience.

### b. *Carvin, Cooper.*

The plaintiff argues that his D.C. counsel should be compensated at their regular hourly rates. The government contends that (1) the award should reflect the "prevailing rate" and not necessarily counsel's "regular rate" and (2) the relevant "prevailing rate" is the rate in the community in which the district court sits.

### i. *Market Rate.*

■ Perhaps the biggest single issue before the Court when determining the appropriate award of fees is whether the plaintiff's appellate counsel can be compensated at the prevailing market rate in the District of Columbia or whether the proper rate to be applied is the prevailing rate in Spokane, Washington. As a general proposition, the government's position that the local rate is the applicable rate is supported by Ninth Circuit authority.

A district court should calculate this reasonable hourly rate "according to the prevailing market rates in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), which typically is the community "in which the district court sits." *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir.), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991).

*Schwarz v. Secretary of Health & Human Serv.,* 73 F.3d 895, 906 (9th Cir.1995).[11]

The Ninth Circuit has recognized a limited exception to the general rule that the relevant community is where the district court sits. *See Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir.1992). In *Gates,* the plaintiffs brought a complex prisoner civil rights class action in Sacramento, California. The plaintiffs, who ultimately prevailed, were represented by counsel from San Francisco. The Ninth Circuit found that the plaintiffs' attorneys were entitled to compensation at the prevailing market rate in San Francisco, rather than the prevailing rate in Sacramento. The Ninth Circuit held that the district court had not abused its discretion in finding that the plaintiffs had presented substantial evidence of the unavailability of any Sacramento attorneys with the requisite experience and resources necessary to handle a case of the magnitude presented. In so holding, the Ninth Circuit agreed with other circuits which have held that "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* at 1405.[12]

That was the conclusion of the Seventh Circuit in *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982) (cited in *Gates,* 987 F.2d at 1405). In *Chrapliwy,* the Seventh

---

**11.** While *Schwarz* involved a Title VII claim, the Ninth Circuit interprets the FOIA's attorney's fees provision consistently with other statutes' attorney's fees provisions. *See Rosenfeld v. U.S.,* 859 F.2d 717, 724 (9th Cir. 1988).

**12.** The Ninth Circuit has called *Gates* a "narrow exception." *See Schwarz,* 73 F.3d at 907.

Circuit found that the district court erred in awarding fees to the prevailing plaintiffs' New York and D.C. attorneys based on the local rate in South Bend, Indiana.

> Pertinent questions where, as here, a court is fixing a fee to be paid by an opponent are whether services of like quality are truly available in the locality where the services are rendered, and whether the party choosing the attorney from elsewhere acted reasonably in making that choice.

*Chrapliwy,* 670 F.2d at 769. The court further noted that "when the defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that the nature of the case required the skills of out of town specialists." *Id.* at 768 n. 18.[13]

Here, the plaintiff has presented evidence that there is a dearth of attorneys in the Eastern District of Washington with practical experience litigating FOIA claims. *See* Workland Supp.Decl. at ¶ 9. In addition, the Court is aware that few attorneys in Spokane have experience litigating a claim of any nature before the Supreme Court of the United States. Mr. Workland, who had no experience with the FOIA prior to representing the plaintiff in this action, is not licensed to practice before the Supreme Court. The Court finds that the lack of experienced FOIA attorneys in Spokane, coupled with the relative scarcity of attorneys with experience litigating before the Supreme Court, made the plaintiff's decision to retain Cooper, Carvin reasonable and justified. Services of a like quality were not truly available in Spokane. In fact, the government itself recognizes that Supreme Court litigation requires a degree of specialization, as it

had its D.C. attorneys handle that portion of this litigation.

The Court therefore finds that this case falls within the *Gates* exception. The plaintiff's out of town attorneys will thus be awarded hourly rates commensurate with the market rate in the District of Columbia.[14]

*ii. Prevailing Rate.*

■■■ The parties also disagree over whether the Court should award the out of town counsel their normal rates, or whether the Court is limited by the prevailing market rate in the District of Columbia. The government argues that the rates requested are too high, even in Washington, D.C.

The established rate to be applied is the " 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.' " *Barjon v. Dalton,* 132 F.3d 496, 502 (9th Cir.1997) (quoting *Chalmers,* 796 F.2d at 1210–11). Thus, " '[w]hile evidence of counsel's customary hourly rate may be considered by the District Court,' " a court must also determine that the hourly rate is commensurate with the market rate in light of the attorney's qualifications. *Maldonado v. Lehman,* 811 F.2d 1341, 1342 (9th Cir.1987) (quoting *White v. City of Richmond,* 713 F.2d 458, 461 (9th Cir. 1983), *abrogation on other grounds recognized, Venegas v. Skaggs,* 867 F.2d 527, 532 (9th Cir.1989)).

The government asks the Court to consider the *Laffey* matrix as proof that the rates requested by the plaintiff's out of town attorneys exceed the market rates in the District of Columbia. The *Laffey* ma-

---

13. Attorneys with specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation, tend to be found in large cities, where an attorney may have a greater opportunity to focus on a narrow area of the law. As a specialist, the attorney will usually charge more for performing services in his area of expertise than a general practi-

tioner will charge for performing similar services.
*Chrapliwy,* 670 F.2d at 769.

14. The plaintiff concedes that his local counsel could have competently handled the attorney's fees portion of the litigation; he agrees that his out of town counsel should be compensated at Spokane rates for their work on that portion of this case.

trix is a uniform index used by courts in the D.C. Circuit to calculate fees in § 1983 cases. *See Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *rev'd on other grounds,* 746 F.2d 4 (D.C.Cir. 1984). The index sets a fixed rate based on the attorney's years of experience and the year in which the work was performed. The U.S. Attorney's Office updates the schedule annually. *See Northwest Coalition,* 965 F.Supp. at 65 n. 4.

The Court is aware that it is not bound by the rates established in the *Laffey* matrix. The plaintiff, however, has submitted no proof that the requested rates match those for similar work performed by attorneys of comparable skill, experience, and reputation. For instance, there are no affidavits from attorneys in the District of Columbia not involved in this litigation that attest to the reasonableness of Cooper, Carvin's fees. The only submissions by the plaintiff upon which the Court can rely are the affidavits from the Cooper, Carvin attorneys themselves and the attorneys' resumes. The updated *Laffey* matrix therefore provides the Court with a solid indication of the prevailing rates in the Washington, D.C. area.

The Court has examined the attorneys' resumes thoroughly. Taking into consideration the skill, experience and reputation of the attorneys, as well as the prevailing market rates set forth in the *Laffey* index, the Court awards the following fees:

| Attorney | Hours | Rate | Award |
|---|---|---|---|
| G. Workland (12/14/95–5/27/97) | 56.1 | 130 | $7,293 · |
| G. Workland (2/23/98–5/14/98) | 34.4 | 140 | $4,816 |
| G. Workland (10/6/98–4/21/00) | 50.2 | 150 | $7,530 |
| A. McBride (Pre–Fees) [15] | 207.575 | 260 | $53,969.50 |
| A. McBride (Fees) [16] | 91.8 | 225 | $20,655 |
| C. Cooper (Pre–Fees) | 157.7 | 360 | $56,772 |
| C. Cooper (Fees) | 5.3 | 300 | $1,590 |
| C. McKiernan | 36.9 | 90 | $3,221 |
| J. Ho | 6.8 | 90 | $612 |
| J. Brown | 10 | 90 | $900 |
| J. Klein | 1 | 30 | $30 |
| K. Eads | 79.7 | 50 | $3,985 |
| M. Ryan | 69.37 | 165 | $11,446.05 |
| M. Travers | 15.1 | 65 | $981.50 |
| R. Brand (Pre–Fees) | 49.1 | 160 · | $7,856 |
| R. Brand (Fees) | 2.1 | 100 | $210 |
| S. Grisby | 57.3 | 50 | $2,865 |

**IT IS HEREBY ORDERED:**

1. The plaintiff's motion for an award of attorney's fees (**Ct.Recs.48, 49**) is **GRANTED.**

2. Gregory Workland is awarded $19,639.00 in attorney's fees. The law firm of Cooper, Carvin & Rosenthal is awarded $165,093.05 in attorney's fees.

3. The plaintiff is awarded $14,906.63 in costs.

4. The plaintiff's motion to exceed page limitations (**Ct.Rec.67**) is **GRANTED.**

5. The defendant's request for an immediate hearing (**Ct.Rec.75**) is **GRANTED.**

15. "Pre–Fees" hours are those hours spent by the plaintiff's attorneys on issues other than attorney's fees.

16. "Fees" hours are those hours the plaintiff's attorneys spent litigating the motion for an award of attorney's fees.

6. This Court's earlier decisions are **VACATED** and this case is **DISMISSED AS MOOT**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.