*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOOLES CONTRACTING GROUP, LLC,

UNPUBLISHED
April 4, 2024

Plaintiff-Appellant,

v

No. 363005
Washtenaw Circuit Court
LC No. 17-000765-CZ

WASHTENAW COUNTY ROAD COMMISSION,

Defendant-Appellee.

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Plaintiff, Tooles Contracting Group, LLC, appeals as of right the trial court's opinion and order ruling that it was entitled to attorney fees of $11,396.68 and expenses of $129.54 from defendant, Washtenaw County Road Commission, as a result of defendant's failure to comply with a particular request for records under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. On appeal, plaintiff primarily argues that the trial court erred by refusing to award it attorney fees for fees that were incurred after defendant's disclosure, but incurred as a result of seeking fees relating to that disclosure. In other words, plaintiff is seeking "fees for fees." Plaintiff also argues that, even if the trial court correctly concluded that the cutoff date for attorney fees was the date of disclosure, the amount awarded by the trial court was erroneously low. We conclude that the trial court did not abuse its discretion and affirm.

## I. FACTS

This is the third time that this case has been appealed to this Court. Briefly stated, in March 2017, plaintiff submitted several FOIA requests to defendant. One of the requests, Request 5, was allegedly unclear, and defendant did not provide responsive records to that request. Plaintiff sued defendant in August 2017, claiming, in relevant part, that defendant violated FOIA with respect to Request 5. After a few months of litigation, defendant understood the scope of the request and provided responsive records to plaintiff in April 2018. The trial court denied plaintiff's request for attorney fees under MCL 150.240(6) of FOIA and, following plaintiff's appeal, this Court concluded that it lacked jurisdiction to address the merits of the attorney-fees claim. Thus, this Court remanded the case to the trial court to address the parties' competing motions for summary

-1-

disposition and then, if necessary, to consider the merits of plaintiff's request for attorney fees. *Tooles Contracting Group, LLC v Washtenaw Co Rd Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued October 3, 2019 (Docket No. 345182) (*Tooles I*). On remand, the trial court granted summary disposition in favor of defendant, concluding, in relevant part, that defendant did not violate FOIA with respect to Request 5. Plaintiff appealed, and this Court reversed that conclusion and remanded to the trial court to award plaintiff attorney fees with respect to Request 5. *Tooles Contracting Group, LLC v Washtenaw Co Rd Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 354045) (*Tooles II*). The trial court did so, and plaintiff has once again appealed, now arguing that the amount awarded was insufficient.

In *Tooles II*, this Court set forth the following facts:

Tooles Group is a minority-owned contractor engaged in the business of preconstruction and construction services. In January 2017, the Road Commission submitted a request for bids on a project to construct a new service center. Tooles Group bid on the project and was the lowest bidder. After the Road Commission's architect interviewed the four lowest bidders, the Road Commission awarded the $7 million contract to another contractor.

In March 2017, counsel for Tooles Group submitted a FOIA request to the Road Commission. Tooles Group listed nine different requests. Request 5 asked for "[a]ny documents related to the Washtenaw County Road Commission's hiring or utilization of Minority-owned and/or Disadvantaged Business Entities on Washtenaw County Road Commission Projects." In Request 6, Tooles Group asked for [a]ny documents or communications that reference Tooles Contracting Group as a Minority-owned company."

The Road Commission acknowledged the request in an e-mail sent the next day. It stated that the request involved an "extensive amount of information" that would take "an extended period of time to gather." It also anticipated that cost would exceed $50 and, for that reason, asserted that it would require an up-front payment of 50%. The Road Commission indicated that it would notify Tooles Group when the information was ready.

On April 5, 2017, the Road Commission sent an e-mail indicating that it had completed Tooles Group's request. It further provided the following "overview of information to be provided" in satisfaction of the request:

Items 1 thru 4 – 158 pages – complete

Item 5 – These documents do not exist

Item 7 – 7 banker boxes of information that can be reviewed

Item 8 – Not applicable, documents do not exist

Item 9 – HR Manager – complete

The Road Commission did not mention Request 6. The Road Commission included invoices for the work and stated that Tooles Group must pay 50% of the fees up front before it would release the requested information.

In August 2017, Tooles Group sued the Road Commission for violating the requirements of FOIA. Tooles Group moved for summary disposition in February 2018, and the Road Commission moved for summary disposition in March 2018. The trial court held a hearing later in March. During the hearing, Tooles Group identified documents that the Road Commission had to submit to the federal government—referred to as subrecipient forms—that it obtained from the Michigan Department of Transportation (MDOT), which, it argued, the Road Commission should have disclosed under Request 5. The Road Commission took the position that Request 5 did not clearly apply to the subrecipient forms. It stated that, had Tooles Group asked for those forms, it would have provided a copy of them.

The trial court inquired about what Tooles Group would have had to have said if wanted those forms. The Road Commission replied:

> Well the exact same thing they said to MDOT. But—we have no issue with them having those forms, they already have them. The real issue is they're here having filed a lawsuit, which isn't necessary saying that we asked for something that they didn't ask for, and MDOT agrees with us, and they want all their attorneys' fees. . . .

The trial court at that point clarified that it would not be awarding attorney fees. It was only trying to be sure that Tooles Group got the documents that everyone agreed it was legally entitled to get. The Road Commission again stated that Tooles Group already had the documents from MDOT, but it agreed that it could "provide them again." The court instructed the parties to go discuss what they wanted and come back for an order; it again related that it just wanted to get Tooles Group any documents that it was legally entitled to get.

In May 2018, the trial court signed an order requiring the Road Commission to provide the subrecipient forms to Tooles Group. The order provided that the court had taken the motions for summary disposition under advisement and that it did not resolve any of the matters in dispute. Later that same month, Tooles Group moved for an award of more than $90,000 in attorney fees. Tooles Group argued that it had prevailed because the trial court ordered the Road Commission to provide the subrecipient forms as requested in Request 5, and so was entitled to its fees.

The trial court held a hearing in July 2018 and indicated [that] it was going to deny the motion for attorney fees. It entered an order to that effect in August 2018. Tooles Group appealed the trial court's decision to deny its request for attorney fees in this Court. This Court concluded that it did not have jurisdiction to hear Tooles Group's appeal as an appeal of right because the trial court never entered an order resolving the parties' competing motions for summary disposition.

This Court treated the appeal as though on leave granted, but for the limited purpose of vacating the trial court's order denying Tooles Group's motion for attorney fees. This Court then remanded the case back to the trial court to address the motions for summary disposition and conduct any further proceedings that might be necessary. See [*Tooles I*].

In April 2020, the Road Commission renewed its motion for summary disposition. The Road Commission incorporated its arguments and documentary support from its previous motion. The Road Commission specifically asked the trial court to order that it did not violate FOIA by failing to turn over the subrecipient forms because the request did not describe the public record sufficiently to enable the Road Commission to find it. The Road Commission also stated that it was not required to turn over any documents until the FOIA fee for the documents that it had collected had been paid.

In May 2020, Tooles Group renewed its motion for summary disposition. It argued that it was entitled to summary disposition in its favor because the undisputed evidence showed that the Road Commission failed to disclose the subrecipient forms, which were clearly encompassed under its Request 5, and completely failed to respond to Request 6. Tooles Group asked the trial court to grant summary disposition in its favor and schedule an evidentiary hearing to determine the amount of its attorney fees.

The trial court held a hearing on the renewed motions in June 2020. Tooles Group argued that its FOIA request sufficiently described the documents requested to include the subrecipient forms. For that reason, it maintained that it was undisputed that the Road Commission violated FOIA by failing to disclose the subrecipient forms. Tooles Group also argued that its decision not to pay the fee request did not absolve the Road Commission of its liability. It explained that the fee request did not apply to the subrecipient forms; it only applied to the documents responsive to Requests 1 through 4.

The Road Commission argued that Request 5 was vague and implied that Tooles Group wanted only documents related to programs for disadvantaged businesses that the Road Commission itself administered. Because it did not administer any such programs, its answer that those documents did not exist was accurate. The Road Commission also argued that paying a fee request is also a prerequisite that must be met before a governmental body has any duty to provide any documents, even if the governmental entity denied in part and granted in part the request. For that reason, it maintained that it ultimately complied with the FOIA request, even though it initially denied that the documents existed, because it eventually provided copies of the subrecipient forms.

After hearing arguments, the trial court stated that it did not believe "that this request, FOIA request, was sufficiently described to enable the Washtenaw County Road Commission to respond about something that they don't have, that didn't exist." The court characterized the request as a "huge fishing net." Because

-4-

the request was not "sufficient for them to respond," the trial court determined that the Road Commission's initial response that the documents did not exist did not violate FOIA. Finally, the trial court agreed that the payment of the FOIA deposit was a prerequisite to the Road Commission's obligation to disclose. Because Tooles Group did not pay the fee, it explained, the Road Commission could not be liable for its determination that there were no documents that fell under Tooles Group's Request 5, and the Road Commission timely rectified its error. On the same day, the trial court entered an order denying Tooles Group's motion for summary disposition, and granting the Road Commission's motion for summary disposition. . . . [*Tooles II*, unpub op at 1-4.]

This Court affirmed the trial court with regard to Request 6—an issue that is not relevant for this appeal—but reversed the trial court with regard to Request 5, reasoning, in relevant part:

As noted, Tooles Group asked the Road Commission in Request 5 to provide "[a]ny documents related to the Washtenaw County Road Commission's hiring or utilization of Minority-owned and/or Disadvantaged Business Entities on Washtenaw County Road Projects." The language of the request was not ambiguous: it asked the Road Commission to disclose any document that has some relation to the Road Commission's "hiring or utilization" of minority-owned businesses or businesses that are classified as disadvantaged business entities. The request was also sufficiently particular to limit the Road Commission's search to a narrow set of documents, which should have been readily identifiable by those persons familiar with the hiring and utilization of minority-owned or disadvantaged businesses.

The subrecipient forms identified during the litigation clearly included information about the Road Commission's "hiring or utilization" of disadvantaged business entities. Indeed, Question 8 on the form asked the Road Commission to list the number of contracts that it entered into with disadvantaged business enterprises during the reporting period and for each period the Road Commission wrote that it did not enter into any such contracts. It explained that MDOT handled its administration of disadvantaged business entities. The fact that the Road Commission did not contract with disadvantaged business entities directly plainly implicated its utilization of such businesses.

The trial court misapplied the law when it determined that Request 5 did not sufficiently describe the records sought. Consequently, it erred when it dismissed Tooles Group's claim premised on the failure to disclose the subrecipient forms; rather, because it was undisputed that the Road Commission failed to disclose the subrecipient forms until after Toole Group sued, the trial court should have granted summary disposition in Tooles Group's favor on that claim. [*Id.* at 8-9 (citations omitted).]

This Court also concluded that because "Tooles Group should have prevailed as a matter of law" with respect to Request 5, "an award of attorney fees is mandatory as to that claim." *Id.* at 10. We added: "Although the award is mandatory, Tooles Group would not be entitled to its

fees associated with those other claims; instead, it may only recover its reasonable attorney fees that it incurred litigating Request 5." *Id*. Accordingly, this Court affirmed the trial court in part, reversed in part, and remanded to that court for further proceedings. *Id*.

On remand, the parties acknowledged that the trial court was required to conduct an evidentiary hearing as to the amount of attorney fees to which plaintiff is entitled relating to Request 5. Plaintiff asserted that its fees totaled "$230,385.02, of which $176,271.03 relate 'to the litigation of Request 5.' " Specifically, plaintiff argued that it was entitled to all attorney fees incurred throughout this case, including on appeal, that involved Request 5. Plaintiff explained that its attorneys billed about 568.9 hours in this case, and of that total, 433.6 hours were spent litigating Request 5.

Defendant responded that plaintiff could not recover attorney fees incurred after April 13, 2018, the date on which it received the records in question. Defendant noted that plaintiff did not prevail on most issues involved in this case, including issues related to Request 6, allegedly improper FOIA fees, failure to provide a FOIA response date, improper FOIA extension, and objections to form of proposed orders. Defendant also argued that the attorney fees claimed by plaintiff were excessive and unreasonable. According to defendant, "[f]or all the litigation, Tooles obtained only 7 pages of documents which WCRC immediately provided when Tooles first raised the issue and which confirmed what WCRC said from the beginning. This is a very humble result." (Emphasis in original.)

The trial court held a hearing on the matter on April 12, 2022. At the hearing, the trial court entertained arguments from the parties regarding the April 13, 2018 possible cutoff date for attorney fees and concluded as follows:

> So temporally, this issue of the trial court awarding appellate fees I have addressed over and over for decades, and I have been instructed as such. If you wish to seek fees for litigation in the appellate courts, the forum to do that is the appellate court.
>
> . . . I've been around long enough. I'll – sometimes the very same issue I will get an opinion within the same month from one panel of the Court of Appeals affirming the way I handled it, and another panel saying, no. You should do it a different way. I accept that.
>
> * * *
>
> The time period that I will consider in the argument and I will make a decision on is fees incurred on or before April 13th, 2018 when the documents in question were provided. You may preserve your arguments that I should have looked beyond that, but the Court of Appeals is certainly I think in a better position to determine based on their view of the application of the mandatory attorney fees to this particular case to enter their own award of attorney fees under the statute and case law.

After the hearing, plaintiff submitted a brief arguing that it was entitled to attorney fees of $66,760.00, which represented 169.2 hours litigating the Request 5 issue before April 13, 2018.

Defendant responded that plaintiff failed to prevail on 10 of 11 issues that it litigated before April 13, 2018, and "a discount of 60% is appropriate for Tooles' failure to prevail on these ten issues."

On August 29, 2022, the trial court entered its 10-page opinion and order.[1] First, the trial court stated that April 13, 2018, is the appropriate cutoff date for attorney fees because MCL 15.240(6) only allows for attorney fees related to achieving production of the public records. Second, the trial court concluded that attorney Schenk was entitled to an hourly rate of $301.67 per hour, as that was the average median hourly rate for an attorney with his experience, practice area, and location. Similarly, the trial court concluded that attorney Kwiecien was entitled to an hourly rate of $282.33, given the same factors. This established a baseline total of $45,586.71.

Third, the trial court applied the factors identified in *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982), to determine a reasonable fee:

> (1) the professional standing and experience of the attorney/attorneys
>
> *This factor is analyzed above and the hourly rate was determined using data from the 2020 Economics of Law Practice report . . . .*
>
> (2) the skill, time, and labor involved;
>
> *Per Plaintiff's summary of the work experience of Mr. Schenk, a FOIA request and the filing of motions to secure the information from the denial of a FOIA request would not be deemed novel or difficult. Any increased degree of difficulty is offset by the higher fees charged for Mr. Schenk due to his experience. . . .*
>
> (3) the amount in question and the results achieved;
>
> *The total amount of fees requested by Plaintiff is $66,760.00. Many tasks were billed by both attorneys assigned to the case. Plaintiff received the information requested from Defendant through FOIA on April 13, 2018. It should be noted that Plaintiff also received the requested information via a FOIA request submitted to the Michigan Department of Transportation prior to receiving the information from Defendant. . . .*
>
> (4) the difficulty of the case;
>
> *Per Plaintiff's summary of the work experience of Mr. Schenk, a FOIA request and the filing of motions to secure the information from the denial of a FOIA request*

---

[1] The original opinion and order was entered on August 29, 2022, and the trial court entered an amended opinion and order on January 13, 2023, which corrected a couple of minor mistakes. We quote from the latter opinion and order.

We note that, contrary to defendant's argument, we have jurisdiction over this appeal because the trial court was permitted to amend its original opinion and order to correct minor mistakes under MCR 7.208(C).

*would not be deemed novel or difficult. Any increased degree of difficulty is offset by the higher fees charged for Mr. Schenk due to his experience. . . .*

(5) the expenses incurred,

*Plaintiff claims expenses totaling $518.15 through April, 2018. . . . The Court feel the same reduction of 75% of the fees is representation of the costs related to the litigation of Request 5 pursuant to the directive set out in the Court of Appeals opinion. . . .*

(6) the nature of the professional relationship with the client;

*The attorney-client relationship began in December, 2015. This case was filed less than two years later. Plaintiff testified at the evidentiary hearing that their client will not be impacted by any decision or award of fees in this case due to the agreement between the client and the firm that attorney fees are limited to the recovery in this action. . . .*

The trial court also discussed the eight factors identified in MRPC 1.5, which overlapped with the *Wood* factors quoted above.

The trial court then provided its analysis of the overall issue, stating as follows:

Plaintiff litigated eleven different arguments for reimbursement of attorney fees. However, the Court of Appeals found a violation only as to Request 5. The Court of Appeals specifically limited the recovery of attorney fees in this case the FOIA Request 5. Plaintiff argues that – even considering the directive of the Court of Appeals that the fees be limited to work done as to FOIA Request 5 – that there is only a slight reduction in the attorney fees claimed by Plaintiff. Per Plaintiff's Fee Analysis, a mere reduction of 18 hours (or 9.6% of the claimed 169.2 hours billed from June 15, 2017 through April 13, 2018) is appropriate.

This Court does not agree. Defendant correctly establishes that Plaintiff dedicated a considerable amount of time to the remaining ten issues articulated by Plaintiff. Considerable time was dedicated to all the requests as established by the arguments contained in Plaintiff's Complaint and Motion for Summary Disposition. Plaintiff clearly dedicated a large and measurable amount of time to litigating numerous other claims then subsequently failed to clearly and concisely separate work done for the advancement of Request 5. Instead, Plaintiff believes this Court should disregard the obvious and award full fee reimbursement on all hours worked by attributing a majority of the hours to litigation relating to Request 5.

\* \* \*

Per the billing records presented by Plaintiff, Mr. Kwiecien worked 123.1 hours on this case and Mr. Schenk worked 36 hours on this case. Defendant argues that a 60% reduction in the billable hours established by Plaintiff seems reasonable.

This Court finds this calculation generous. After evaluating the records presented regarding the billable hours in this case, this court finds that a reasonable number of hours should be reduced by 75% given the multiple issues argued by Plaintiff in this case and the directive from the Court of Appeals that reimbursement be limited to Request 5.

Accordingly, the trial court ruled that plaintiff was entitled to $11,396.68 in attorney fees, which it calculated by multiplying the reasonable hourly rate by the number of hours expended in this case ($45,586.71), and then reducing that figure by 75%. Finally, the trial court concluded that plaintiff was not entitled to additional damages under MCL 15.240(7) because defendant did not arbitrarily and capriciously violate FOIA.

Plaintiff now appeals.

## II. STANDARD OF REVIEW

"[T]he proper interpretation and application of FOIA is a question of law that we review de novo." *Rataj v City of Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014). "We review for clear error the trial court's factual findings underlying its application of the FOIA." *Mich Open Carry, Inc v Dep't of State Police*, 330 Mich App 614, 621; 950 NW2d 484 (2019). "A finding is clearly erroneous if, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake was made." *Id*. "We review an award of attorney fees to a prevailing plaintiff in an action under the FOIA for an abuse of discretion." *Messenger v Ingham Co Pros*, 232 Mich App 633, 647; 591 NW2d 393 (1998). See also *Mich Tax Mgt Servs Co v City of Warren*, 437 Mich 506, 507; 473 NW2d 263 (1991) ("When awarding attorney fees under the FOIA, the trial court must determine the amount that is reasonable. The standard for reviewing the trial court's determination is whether the court abused its discretion."). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Jilek v Stockson (On Remand)*, 297 Mich App 663, 665; 825 NW2d 358 (2012) (quotation marks and citation omitted).

## III. CUTOFF DATE

Plaintiff argues that the trial court erred by ruling that it was not entitled to attorney fees incurred after April 13, 2018. We conclude that, although the trial court could have ruled otherwise, it was not an abuse of discretion to limit recovery to that date.

"Under the FOIA, an individual has the right to inspect, copy, or receive copies of a public record after providing the public body's FOIA coordinator with a 'written request that describes a public record sufficiently to enable the public body to find the public record . . . .' " *Detroit Free Press, Inc v City of Southfield*, 269 Mich App 275, 280-281; 713 NW2d 28 (2005), quoting MCL 15.233(1). "Consistent with the FOIA's underlying policies, a public body is required to grant full disclosure of its records, unless they are specifically exempt under MCL 15.243." *Id*. at 281. "In court, the burden is on the public body to justify its denial." *Id*.

When a public body denies a request for records, the requesting person may file a civil action under MCL 15.240, which provides, in relevant part:

(1) If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:

* * *

(b) Commence a civil action in the circuit court, or if the decision of a state public body is at issue, the court of claims, to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

* * *

(6) If a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person or public body prevails in part, the court may, in its discretion, award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements. The award shall be assessed against the public body liable for damages under subsection (7).

(7) If the court determines in an action commenced under this section that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public record, the court shall order the public body to pay a civil fine of $1,000.00, which shall be deposited into the general fund of the state treasury. The court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $1,000.00 to the person seeking the right to inspect or receive a copy of a public record. The damages shall not be assessed against an individual, but shall be assessed against the next succeeding public body that is not an individual and that kept or maintained the public record as part of its public function.

At issue here is MCL 15.240(6). Our Supreme Court recently summarized the well-established caselaw concerning this subsection as follows:

[U]nder MCL 15.240(6), when a party "prevails," the court is required to award the party reasonable attorney fees. On the other hand, when a party only "prevails in part," then the court may, in its discretion, award all or an appropriate portion" of a reasonable fee.

We have explained that to "prevail" under MCL 15.240(6), a court must conclude that the action was reasonably necessary to compel the disclosure of public records, and that the action had a substantial causative effect on the delivery of the information to the plaintiff. Courts should also consider whether the party obtained everything it initially sought. Thus, a court's analysis of whether the plaintiff prevailed considers three fundamental questions: (1) Was the action reasonably necessary to compel the disclosure of the records? (2) Did the action actually have the causative effect of delivering the information? And (3) did the plaintiff obtain everything it initially sought? [*Woodman v Dep't of Corrections*,

-10-

___ Mich ___, ___; ___NW2d ___ (Docket Nos. 163382 & 163383); slip op at 10-11 (cleaned up).]

In other words, "a plaintiff 'prevails' in the action so as to be entitled to a mandatory award of costs and fees where he is forced into litigation and is successful with respect to the central issue that the requested materials were subject to disclosure under the FOIA . . . ." *Thomas v City of New Baltimore*, 254 Mich App 196, 205; 657 NW2d 530 (2002) (quotation marks and citation omitted).

Release of the requested records by the public body during litigation renders the substantive FOIA claim moot. See *State News v Mich State Univ*, 481 Mich 692, 704 n 25; 753 NW2d 20 (2008) ("Of course, release of the requested public record by the public body would render the FOIA appeal moot because there would no longer be a controversy requiring judicial resolution."). "However, the mere fact that [a] plaintiff's substantive claim under the FOIA was rendered moot by disclosure of the records after plaintiff commenced the circuit court action is not determinative of [the] plaintiff's entitlement to fees and costs under MCL 15.240(6)." *Amberg v City of Dearborn*, 497 Mich 28, 33; 859 NW2d 674 (2014) (cleaned up). "Although a party may be entitled to attorney fees when his or her action is rendered moot by subsequent disclosure, such entitlement is still based on proof of an underlying FOIA violation." *Cramer v Village of Oakley*, 316 Mich App 60, 70; 890 NW2d 895 (2016) (citations omitted), vacated in part on other grounds, 500 Mich 964 (2017).

The underlying question here is whether plaintiff is entitled to attorney fees incurred after April 13, 2018, the date on which the requested records were disclosed, to litigate whether attorney fees are warranted under FOIA.

Neither this Court nor our Supreme Court has directly answered that question. In *Meredith Corp v City of Flint*, 256 Mich App 703; 671 NW2d 101 (2003), which was relied upon by the trial court in this case, this Court stated that "as long as an action for disclosure of public records is initiated pursuant to the FOIA, the prevailing party's entitlement to an award of reasonable attorney fees, costs, and disbursements includes *all* such fees, costs, and disbursements related to achieving production of the public records." *Id*. at 715. The most straightforward implication of this statement is that attorney fees incurred after disclosure are not related to "achieving production" of records and, thus, are not recoverable. However, the statement also may be reasonably understood as requiring an award of attorney fees for litigation that is, in a broad sense, "related to" production of records. And, in this case, the post-production litigation was "related to" that production of records identified in Request 5.

In *Swickard v Wayne Co Med Examiner*, 196 Mich App 98; 492 NW2d 497 (1992), the plaintiff filed a delayed motion for attorney fees after prevailing on appeal as to the merits of his FOIA claim, which the trial court granted. *Id*. at 100. The defendant appealed, and this Court affirmed, reasoning that MCL 15.240 "does not impose a time limit upon a prevailing party's request for attorney fees." *Id*. at 102. In addition, this Court reasoned as follows:

Plaintiff requests that this Court remand the case to the trial court for a determination of the additional amount of attorney fees and costs incurred in this appeal. Plaintiff has belatedly filed an affidavit in connection with those attorney

-11-

fees, which we ordered stricken as an expansion of the record below. We decline to remand, because plaintiff has failed to demonstrate that prosecution of this appeal was necessary to, and had a causative effect on, the delivery of or access to the documents that were the substantive material obtained. Further, we find that the appeal was not a continuation of the process started below that had any causative effect on the disclosure. This appeal would have been unnecessary had the more appropriate course of action been pursued with regard to the attorney fees and costs during the preceding circuit court, Court of Appeals, and Supreme Court litigation in the underlying action. [*Id*. at 102-103 (citation omitted).]

*Swickard* includes language that may support either party in this case. On one hand, the sentence, "We decline to remand, because plaintiff has failed to demonstrate that prosecution of this appeal was necessary to, and had a causative effect on, the delivery of or access to the documents that were the substantive material obtained," supports defendant because none of the post-April 2018 proceedings had a causative effect on delivery of the documents identified in Request 5. On the other hand, the sentence, "Further, we find that the appeal was not a continuation of the process started below that had any causative effect on the disclosure," supports plaintiff because at least some of the post-April 2018 proceedings were a continuation of the process that resulted in disclosure.

In *In re Sloan Estate*, 212 Mich App 357; 538 NW2d 47 (1995), this Court concluded that under the since-repealed Revised Probate Code, a trial court was not authorized to allow "compensation for the ordinary fees and costs arising out of the need to establish and defend a petition for attorney fees." *Id*. at 364. This Court reasoned that "the ordinary fees and costs incurred in establishing and defending a fee petition are inherent in the normal course of doing business as an attorney, and the estate may not be diminished to pay those fees and costs." *Id*. at 363. *In re Sloan Estate* thus suggests that "fees for fees" may not be awarded. In other words*, In re Sloan Estate* suggests that attorney fees incurred to establish statutory entitlement to attorney fees may not themselves be awarded. However, that case involved the Revised Probate Code, not a public-interest statute such as FOIA.

The United States Court of Appeals for the District of Columbia Circuit has concluded that "fees for fees" are recoverable in a federal FOIA action. See *Hardy v Bureau of Alcohol, Tobacco, Firearms and Explosives*, 293 F Supp 3d 17, 32 (D DC, 2017) ("The law is settled in this circuit that hours reasonably devoted to a request for fees are compensable.") (cleaned up). However, courts in that circuit "must . . . withhold fees on fees where the plaintiff needlessly prolongs litigation." *Electronic Privacy Info Ctr v Dep't of Homeland Security*, 197 F Supp 3d 290, 297 (D DC, 2016) (quotation marks and citation omitted). See also *Rosenfeld v United States Dep't of Justice*, 903 F Supp 2d 859, 866 n 5 (ND Cal, 2012) (explaining that, in a FOIA case, "a court may reduce the amount of hours used to calculate a fee award . . . if the hours expended are deemed excessive or otherwise unnecessary") (quotation marks and citation omitted). These cases suggest that the trial court in this case was not statutorily prohibited from awarding such fees, or even that it generally was required to award such fees. But see *Weatherhead v United States*, 112 F Supp 2d 1058 (ED Wash, 2000) (explaining that the FOIA plaintiff was not entitled to attorney fees incurred post-disclosure, given that "[a] district court has the discretion to disallow any fees for time spent litigating the case after the last benefit won from the defendant, because the expenditure

-12-

of such time is equivalent to expending time litigating particular claims that are unrelated to the relief ultimately obtained") (cleaned up).[2]

We need not resolve whether MCL 15.204(6) presumptively requires or prohibits an award of attorney fees incurred post-disclosure to establish entitlement to fees in the first instance. Even applying the standard established by the D.C. Circuit, which is more clearly favorable to plaintiff than the cases cited by plaintiff on appeal, the trial court did not abuse its discretion in this particular case. Plaintiff's post-disclosure presentation of the issues to the trial court and this Court has, in our view, needlessly protracted this litigation. *Tooles I* remanded the case to the trial court to resolve "the parties' competing motions for summary disposition and [award] any further relief that may be warranted." *Tooles I*, unpub op at 1. At that point, on remand, the trial court should have ruled that the competing motions for summary disposition were moot and simply decided the attorney-fees issue. See *Amberg*, 497 Mich at 33.[3] Instead, the parties argued the merits of the motion for summary disposition, and the trial court, understandably, resolved the merits of the motion. Plaintiff then appealed to this Court, arguing that the trial court erred by denying its motion for summary disposition. This Court consequently issued *Tooles II*, which affirmed the trial court's denial of the motion with respect to Request 6 but reversed with respect to Request 5. *Tooles II*, unpub op at 4-9. Arguably, the *Tooles II* panel could have ruled that the motion was moot, rather than addressing the merits.[4] Simply put, plaintiff has repeatedly presented a moot issue to the trial court and this Court.

Moreover, the focus on whether defendant violated FOIA largely misses the mark as to plaintiff's entitlement to attorney fees. In *Woodman*, as noted, our Supreme Court recently addressed entitlement to attorney fees under MCL 15.240(6). Nowhere in that opinion did the Court reference a violation of FOIA as being a requirement for a recovery of attorney fees under that statute. While the absence of a FOIA violation might suggest that "the action [did not] actually have the causative effect of delivering the information," see *Woodman*, ___ Mich at ___; slip op at 11, it simply is part of the "prevailing party" analysis required by MCL 15.240(6). For example, in *Arabo v Mich Gaming Control Bd*, 310 Mich App 370; 872 NW2d 223 (2015), this Court concluded that the defendant did not violate FOIA because the plaintiff failed to pay the statutory deposit, and then concluded that the plaintiff was not entitled to attorney fees: "In light of plaintiff's nonpayment, a lawsuit was not reasonably necessary to compel the disclosure of the

_____

[2] "In contexts where Michigan and federal statutory law track one another, this Court has found federal precedent to be persuasive." *Wilcox v Wheatley*, 342 Mich App 551, 560; 995 NW2d 594 (2022). 5 USC 552(a)(4)(E)(*i*) of the federal FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." This language is similar to MCL 15.240(6).

[3] Plaintiff's motion for summary disposition concerned Requests 5 and 6, as well as other relatively minor issues. As this Court explained in *Tooles II*, plaintiff's complaint did not plead a FOIA violation with respect to Request 6, and Request 5 was satisfied in 2018. *Tooles II*, unpub op at 2-5. Thus, there was nothing left to resolve as to the motion for summary disposition.

[4] See *Cramer v Village of Oakley*, 500 Mich 964, 964 (2017).

required documents, and, therefore, plaintiff could not maintain an action for damages under [MCL 15.240] of the FOIA." *Id*. at 406. In other words, whether a public body violated FOIA may be part of the analysis for determining whether a requesting person is a "prevailing party" under MCL 15.240(6), but it is not an independent consideration. Accordingly, whether defendant violated FOIA in 2017 may be a relevant consideration for determining whether plaintiff is entitled to attorney fees under MCL 150.240(6), but that issue has obscured the underlying analysis required by statute.

To summarize, the standard of review for an award of attorney fees under FOIA is abuse of discretion. See *Messenger*, 232 Mich App at 647; *Mich Tax Mgt Servs Co*, 437 Mich at 507. There is no Michigan caselaw providing that the trial court is either required to award "fees for fees" or prohibited from awarding such fees, which suggests that the default principle is that an award of such fees remains within the trial court's discretion. Here, given the extended procedural history of this case described above, we conclude that the trial court did not abuse its discretion by refusing to award plaintiff attorney fees incurred after April 13, 2018, because plaintiff was largely responsible for prolonging the litigation. See *Electronic Privacy Info Ctr*, 197 F Supp 3d at 297.[5]

## IV. ATTORNEY-FEES REDUCTION

Plaintiff briefly argues that the trial court erred by reducing its attorney-fee award by 75%. According to plaintiff, "[t]he trial court failed to consider that FOIA 5 was the dominant issue in this case, and the most complex, and that the vast majority of the complaint and motion practice was spent on that issue."[6] We disagree.

In *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), our Supreme Court set forth the following framework to determine an award of attorney fees under the no-fault act, MCL 500.3101 *et seq*.:

---

[5] Plaintiff observes that in *Tooles II*, this Court stated that plaintiff was entitled to attorney fees incurred "to litigate whether the Road Commission wrongfully denied Request 5." *Tooles II*, unpub op at 9. Plaintiff argues that under the law-of-the-case doctrine, the trial court was required to follow this ruling and award its attorney fees incurred at least through the *Tooles II* appeal, when it was finally decided that defendant violated FOIA with respect to Request 5. In our view, plaintiff overemphasizes a single statement in *Tooles II* to elevate it to "law of the case" status. The law-of-the-case doctrine provides that "if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021) (quotation marks and citation omitted). Here, the "legal question" that *Tooles II* decided was that plaintiff is a "prevailing party" under MCL 15.240(6) and entitled to attorney fees. The scope of the amount of attorney fees to be awarded to plaintiff was not addressed or decided by *Tooles II*.

[6] Plaintiff does not challenge the trial court's analysis of the *Wood* and MRPC 1.5 factors for determining a "reasonable" attorney fee.

-14-

[W]e hold that when determining the reasonableness of attorney fees awarded under [MCL 500.3148(1)], a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Thereafter, the trial court must consider *all* of the remaining *Wood* and MRPC 1.5(a) factors to determine whether an up or down adjustment is appropriate. [*Id*. at 281 (footnotes omitted).]

"These factors are not exclusive, and the trial court may consider any additional relevant factors." *Id*. at 282.

In this case, the trial court followed the *Pirgu* framework and determined that the awardable attorney fees should be reduced by 75%. After reviewing the lower-court record of the proceedings before April 13, 2018, we conclude that the trial court did not abuse its discretion in this regard. It is true that the primary legal issue identified in the seven-page complaint concerned Request 5. Further, most of the March 29, 2018 motion hearing concerned Request 5. On the other hand, however, in plaintiff's 20-page brief in support of its February 7, 2018 motion for summary disposition, only about 3½ pages were dedicated to Request 5. Six-and-a-half pages were dedicated to other legal issues, and the remaining pages addressed other aspects of the filing, such as a statement of facts and a request for relief. Briefs exchanged by the parties shortly thereafter reflected similar ratios of the issues discussed. Moreover, on April 4, 2018, plaintiff filed a couple of relatively minor objections to a proposed order submitted by defendant. Those objections were rejected by the trial court at a later motion hearing.

Simply put, the trial court did not clearly err by finding that plaintiff "dedicated a considerable amount of time" to issues beyond Request 5. The trial court's determination that a reduction of 75% is warranted was supported by the record and did not constitute an abuse of discretion.

## V. CONCLUSION

The trial court did not abuse its discretion by refusing to award plaintiff attorney fees incurred after April 13, 2018, the date of disclosure. Nor did the trial court abuse its discretion by awarding plaintiff attorney fees of $11,396.68. We affirm.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh

-15-